J. G. STUMPF, Respondent, *v.* H. MUELLER ET AL., Appellants.

April 7, 1885.

1. EVIDENCE—IMMATERIAL ISSUES—PRACTICE.—Evidence upon immaterial issues is properly excluded.

2. —— In an action for the value of goods made for and sold to the de-

fendant, it is proper to exclude evidence upon an issue as to whether the defendant had received and paid for goods previously so made and sold.

3. SALES—TENDER.—A physical tender of goods is not necessary to pass the title, where the purchaser declines to accept them.

4. PRACTICE—EVIDENCE.—In an action at law, a judgment which is not supported by substantial evidence will be reversed.

APPEAL from the St. Louis Circuit Court, THAYER, J. *Reversed and remanded.*

KEHR & TITTMANN, for the appellants: In this case, according to the petition, the articles to be manufactured by plaintiff were to be finished and ready for delivery to the defendants, in the city of St. Louis, on or before the first day of November, 1882. The time for the delivery being fixed, and the articles being portable, as the plaintiff in his testimony concedes, it was his duty to take the goods to the store or warehouse of defendants, and there offer to deliver them; and until so delivered or tendered at the place of delivery, and accepted by defendants, the title did not pass and the goods remained at the risk of the plaintiff.—*Stillwell* v. *Bowling*, 36 Mo. 310; *Moody* v. *Brown*, 34 Maine 107; *Roberts* v. *Beatly*, 2 Penn. 63; *Bennett* v. *Platt*, 9 Pick. 558; *Mixer* v. *Howarth*, 21 Pick. 205; *Gammage* v. *Alexander*, 14 Tex. 414; *Bladsell* v. *Souther*, 6 Gray 149-152; *Spencer* v. *Cone*, 1 Metc. 283; *Barr* v. *Myers*, 3 W. & S. 295; *McConike* v. *N. Y. & E. R. R. Co.*, 20 N. Y. 495; *Andrews* v. *Durant*, 11 N. Y. 35; *Shaw* v. *Smith*, 48 Conn. 306; *Hanauer* v. *Bartels*, 2 Colo. 514; *Woodle* v. *Whitney*, 23 Wis. 55; *Rider* v. *Kelley*, 32 Vt. 269.

R. S. MACDONALD and E. P. JOHNSON, for the respondent: Where nothing remains to be done but delivery, the title passes to the purchaser.—*Alexander* v. *Williams*, 39 Mo. 201; *Siegerson* v. *Kahman*, 39 Mo. 206. When articles are ordered to be manufactured, and they are finished according to contract, and notice of the fact given to the party that made the order, the title to the articles passes to him, and they remain with the manu-

facturer thereafter at the risk of the party who made the order.—*Goddard* v. *Binney*, 115 Mass. 450; *Brewer* v. *Michigan Salt Ass.*, 47 Mich. 526; *Shawhan* v. *Van Nest*, 25 Ohio St. 490; *Higgins* v. *Murray*, 4 Hun. (N. Y.) 565; *Bennett* v. *Smith*, 15 Wendell 493; *Ballantine* v. *Robinson*, 46 Penn. St. 177; *Bookwalter* v. *Clark*, 10 Fed. Rep. 793; *Allen* v. *Jarvis*, 20 Conn. 38; *Pratt* v. *Maynard*, 116 Mass. 388; *Hadley* v. *Pugh et al.*, Wright (Ohio) 554; *Groff* v. *Belche*, 62 Mo. 400; *Swartz* v. *Chappell*, 19 Mo. 304; *Nofsinger* v. *Ring*, 71 Mo. 149.

THOMPSON, J., delivered the opinion of the court.

The plaintiff states in his petition that, on or about the 15th day of October, 1882, the defendants employed the plaintiff to make certain patent articles of furniture according to a United States patent owned and controlled by defendant; that the articles to be made by plaintiffs were to be finished and ready for delivery in the city of St. Louis to defendants on or before the 1st day of November, A. D., 1882; the articles and prices to be paid for the same were as follows: Here follows an enumeration of the articles and the prices, showing that the articles consisted of two kinds of cupboards or kitchen safes, the contract price for which was $3.20 and $2.05 each, respectively, the aggregate number being 268 and the aggregate price $703.50. The petition then states that the plaintiff furnished the material and manufactured said articles in a good and workmanlike manner, and tendered the same and offered to deliver the same to the defendants before the said first day of November, 1882, but that defendants refused the same. Wherefore plaintiff prays judgment, etc.

The defendants in their answer "admit that they employed the plaintiff to make for them certain articles of furniture of the kind named in the account set forth in the plaintiff's petition, but they deny that they were to be made according to any patent owned or controlled by the defendants; they deny that on or about the 15th day of October, 1882, or at any one time they employed plaintiff to manufacture the cupboards contained in said

account; that they ever contracted with the plaintiff to manufacture cupboards to be delivered on or before the 1st day of November, 1882; they deny that the plaintiff ever tendered the said cupboards contained in said account, or offered to deliver the same to the defendants before the 1st day of November, 1882; or that the defendants ever refused to receive from plaintiff any cupboards ordered or tendered to them.

"And further answering, the defendants say that they did from time to time, during a long period of time, as they were wanted by defendants, order from the plaintiff cupboards of the kind contained in the said account, and that said cupboards were so ordered from the plaintiff, under an agreement between the plaintiff and defendants, by which the plaintiff agreed to manufacture for defendants cupboards of the kind aforesaid, for an agreed price, and deliver the same when completed at defendants' place of business in the city of St. Louis; and defendants say that all cupboards so ordered by defendants from the plaintiff, and by him delivered as aforesaid, or tendered, were received by defendants and were fully paid for by defendants long prior to the institution of this suit."

Upon the issues thus made up there was a trial before a jury, which resulted in a verdict and judgment in favor of the plaintiff for the amount claimed, with interest.

The plaintiff gave evidence tending to sustain fully the allegations of his petition; showing that the defendants had, on or about the 12th or 15th of October, 1882, given to him orders to make for them the 268 cupboards in question, one order being for 120 and the other order for 148 cupboards; that they were to be done on or before the 1st of November, and ready for shipment on the cars; that he made them in accordance with the order in a good workmanlike manner, packed them for shipment, and then, before the 1st of November, notified the defendants that he had executed the order, and that he desired to deliver the goods; that they declined to

receive the goods, giving as a reason that their warehouse was full, and further, that as they desired to ship them they did not want the trouble of handling them twice. The plaintiff gave evidence distinctly to the effect that there was no agreement that he should deliver these particular goods either at the defendants' store or warehouse, but he admitted that he had been making the same kind of goods for them for a year and a half, under a parol contract made between them and his former partner, which contract contemplated the delivery of the goods by him at the defendants' store or warehouse. His testimony was distinctly to the effect that he made several offers to the defendants to deliver these goods, but that these offers were declined until the 28th or 29th of November, when the goods were destroyed by fire in the plaintiff's factory. This state of facts was controverted in most particulars by the defendants' evidence; but as the jury found for the plaintiff, for the purposes of this appeal, the testimony adduced by him in support of the allegations of his petition, is to be taken as true.

I. The first point which we shall consider relates to certain rulings of the circuit court in excluding evidence of payment by the defendants to the plaintiff of certain invoices of goods of the kind sued for, between the 12th of October and the 25th of November, 1882. The answer of the defendants, it will be remembered, denies the making of any contract with the plaintiff whereby the plaintiff was to make the number of cupboards alleged in the petition, to be delivered on or before the first of November, but it seems that they ordered from the plaintiff such cupboards of the kind named from time to time, under an agreement to pay him an agreed price for them *when delivered*, and that they had paid him for all such cupboards so delivered or tendered to them by him prior to the institution of this suit. The plaintiff by a reply put this new matter in issue. Now, the plaintiff in his testimony stated that he received the orders from the defendants to manufacture the safes in

question about the 12th or 15th of October; that when he received those orders he had no safes and cupboards on hand of the kind that he had been making for the defendants, having delivered all that he had made under previous orders; and that, between the receipt of these orders of the 12th or 15th of October, and the time of the fire, he only received from the defendants three or four other small orders, "averaging from 1 to 6 or 7—perhaps 12 safes or cupboards." Contrary to this testimony, the defendants at a subsequent step of the trial, proved by invoices rendered to them by the plaintiff, containing accounts of goods delivered by the plaintiff to the defendants at various dates, beginning with October 12 and ending with November 25, that the plaintiff had, in point of fact, between the alleged dates of the giving of the orders in question, and the date of the fire, delivered to the defendants 301 cupboards. While the plaintiff was testifying as a witness before the defendants had put these invoices in evidence, he was asked by the defendants on cross-examination, whether he had been paid by them in full for all safes or cupboards which they had received from him between the dates above named. This question was objected to by the plaintiff on the ground that it was incompetent and immaterial, and the court sustained the objection, on the ground, as the bill of exceptions recites, "that the action was not brought to recover the price of goods claimed to have been delivered, but to recover the price of goods claimed to have been on hand on November 1st, 1882, which remained on hand at the time of the fire and were burned." After the above named invoices had been put in evidence, one of the defendants, testifying as a witness, was asked by the defendants whether or not the defendants had paid the plaintiff for the safes and cupboards named in these invoices. This question was in like manner objected to by the plaintiff, on the ground that it was irrelevant and incompetent, and this objection was also sustained, presumably on the same ground as the former objection. Stating the question

fully, as we have done, in order to show its bearings, we do not see where the exclusion of this testimony could have prejudiced the defendants' case, or on what ground its exclusion can be regarded as error in point of law. The plaintiff was not suing for goods which had been delivered and not paid for. He was suing for goods which had been tendered and not delivered, because delivery had been refused. Whether or not the defendants had paid him for all the goods of the same kind which he had delivered to them, would, therefore, seem to be an immaterial issue. Although the defendants tendered such an issue in their answer, and the plaintiff made it an issue by his reply, an answer to the question, yes or no, could not have had any direct bearing upon the inquiry. Before an intelligent jury it would probably have had no effect one way or the other. But, as it was not material to the real issue on trial, its exclusion certainly affords no ground for reversing the judgment.

II. The defendants offered instructions to the effect that if, by the terms of the contract, the articles which the plaintiff had agreed to manufacture were to be delivered by him to the defendants, either at a specified time or at their warehouse, then, in either case, it was the plaintiff's duty to take the goods, when finished, to the defendants' store or warehouse, and there deliver, or offer to deliver them to the defendants. The court refused these instructions, and in lieu thereof gave the following of its own motion: "If the jury believe from the evidence that the defendants employed plaintiff to make the cupboards specified in the petition, and at the prices therein specified, and that the agreement between the parties was that said cupboards were to be finished and ready for delivery to defendants in the city of St. Louis, on or before the 1st day of November, 1882, and if you further believe from the evidence that the plaintiff did manufacture such cupboards in a workmanlike manner and have them finished and ready for delivery at his place of business in the city of St. Louis, on or

prior to November 1st, 1882, and did notify defendants of such fact and offer to deliver the property to them; and if you further believe that defendants either refused to receive the same when plaintiff offered to make delivery, or requested plaintiff to hold the property for them until some future time, then plaintiff is entitled to recover the agreed price of such property and interest thereon at six per cent. per annum, from September 15, 1883, to this date.'' These rulings present sharply the chief question of law on which the defendants ask us to reverse this judgment. Their position is, that it was not enough that the plaintiff notified the defendants of his readiness to deliver the goods prior to November 1st, 1882, and that the defendants declined to receive them on the ground that they had no warehouse room for them, but that, after such declination, it was obligatory on the plaintiff, in order to save himself from default, to go to the expense of loading the goods up on wagons and hauling them to the defendants' place of business, and there making a physical tender of them. We do not believe that the law is in such a state as to require the doing of a thing so absurd. It is a well settled rule of law in regard to the tender of money, that a tender is not required, in order to save the rights of a party, where it is apparent from what has already taken place, that the tender, if made, would be refused.— *Westlake* v. *St. Louis*, 77 Mo. 47. This is simply a branch of the broader legal doctrine, that if one party to a contract refuse to permit the other party to perform the contract, the latter being in no fault, this refusal is equivalent to a performance for the purpose of enabling the latter to maintain an action against the former upon the contract.—*Pond* v. *Wyman*, 15 Mo. 175; *Steinberg* v. *Gebhardt*, 41 Mo. 519; *Nearns* v. *Harbert*, 25 Mo. 352. Taking, then, the defendants' testimony as true, that no contract had ever been made between them and the plaintiff for the making of articles of the kind sued for, which did not contemplate delivery by the plaintiff at defendants' store or warehouse, the plaintiff's position

must still be regarded as being as good as it would have been if delivery had actually been made, provided he failed to make delivery in consequence of a subsequent request that he should not make it. This subsequent request was not only a waiver on the part of the defendants of so much of the contract as required delivery, but, acted upon by the plaintiff, it became equivalent to a subsequent modification by the parties of the original contract. How, then, stood the rights of the plaintiff as thus modified? Our decisions answer this question distinctly. "When the seller has performed all that is required of him by the terms of the contract, and delivery alone remains to be made, the property vests in the buyer so as to subject him to the risk of any accident which may befall the subject matter of the sale." — *Williams* v. *Gray*, 39 Mo. 201, 204; *Sigerson* v. *Kahmann*, 39 Mo. 206.

III. Finally, it is contended that the verdict is not supported by the evidence. This contention is based upon the following grounds: The plaintiff, testifying in his own behalf, on cross-examination stated: "When I got the orders of about October 12th or 15th, I had no safes and cupboards of the kind that I had been making for Mueller Bros. on hand. I had delivered all that I had made under previous orders. After the orders of about the 12th or 15th of October, and between that time and the day of the fire, I got only three or four small orders averaging from 1 to 6 or 7, perhaps 12, safes or cupboards. The first one of these small orders I got a few days after November 1, 1882." The defendants afterwards put in evidence the invoices above described, which the plaintiff had rendered to them for safes manufactured by him and delivered to them between the 12th of October and the 25th of November, amounting to 301 safes in all. The rendering of these invoices by the plaintiff to the defendants was not denied, but the plaintiff in his testimony given in rebuttal, gave the following explanation of them: "The invoices read in evidence are for goods which Mueller Brothers got from me after

the fire. [On looking at the dates.] They were not for goods which they got from me after the fire, but they do not include the goods described in my petition, and for which I have brought suit." One witness, Mr. Oswald, testifying for the plaintiff, had so far corroborated his testimony as to state that, at the time of the fire, there was a large lot of safes and cupboards piled up in the factory, which had been there four or five weeks. Two other witnesses, Mr. Walker and Mr. Emming, who had been employes of the plaintiff, testified that there were in the plaintiff's factory, packed and ready for shipment, a great car load of safes and cupboards, from 250 to 300 of them; but their testimony related to the latter part of October, and had no reference to the time fixed by the alleged agreement for the completion of the safes in question, and not to the time of the fire.

Now, in analyzing this testimony and considering the purport of it, it must be remembered that the question was not merely how many safes and cupboards were on hand in the plaintiff's factory at the time of the fire, because the plaintiff may, for reasons of his own, have manufactured a large number in advance of orders from the defendants, which orders the testimony on both sides shows he had been continuously receiving and filling for a year and a half. But the inquiry was, what safes had the plaintiff on hand in his factory at the time of the fire which he had made for the defendants in pursuance of an actual order received from them, and which they had subsequently declined to allow him to deliver. In this regard one is struck with the wide discrepancy between the testimony of the plaintiff, given on cross-examination in the course of his case, and what is shown by the invoices which the defendants subsequently proved, and the plaintiff subsequently admitted, that he had rendered to defendants for safes delivered to them between the 12th of October and 29th of November, the former date being the earliest day fixed by his testimony as the date of his reception of the order from the defendants to manufacture the safes in controversy,

and the latter date being but two or three days before the fire. The plaintiff, when first testifying, as I read his testimony, concedes the delivery by him to the defendants of no more than 12 cupboards or safes in no more than three or four small orders between these dates. They subsequently prove and subsequently admit, that between the dates named he actually delivered 301 safes and cupboards to them. Now, when first testifying, he distinctly states that, at the time of receiving these two orders for the making of the 268 safes, in respect of which this action is brought, namely, on or about the 12th or 15th of October, he had no safes on hand which he manufactured for the defendants under previous orders—they had all been delivered. And when recalled in rebuttal, he has no other explanation to make of this discrepancy than the general statement that the safes, in respect of which this action is brought, were not the safes mentioned in these invoices. But that may well be, and yet he may have no right of action; for they may have been safes which he may have seen fit to manufacture for future orders for the defendants. This being so, accepting the distinct facts which the plaintiff has sworn to as true, it clearly appears that, between the dates when the plaintiff claims to have received the order to make the 268 safes in question, and the date of the fire, he had already delivered to the defendants more than 268 safes, for which he had received no other order except the order to make these 268 for which he sues. The verdict of the jury, therefore, appears to be contrary to the plaintiff's own evidence; and when in addition to this it is remembered that the defendants offered in evidence a receipt given them by the plaintiff on the 1st of December, which was subsequent to the fire, for $381.21, "in full of all demands to date," and that the plaintiff offers no satisfactory evidence explaining how, as a business man, he came to give such a receipt if the defendants at the very time owed him over $700.00, as he now claims, it must be said that this verdict is so clearly unsupported by the evidence that we ought not to allow it to stand.

The judgment is reversed and the cause remanded. All the judges concur.