### POND, RESPONDENT, vs. WYMAN, APPELLANT.

1. A judgment will not be reversed for the refusal of instructions, if the instructions given, present to the jury a correct and full statement of the law governing the case. If two instructions, each improper in itself, amount to a correct statement of the law when taken together, the error in each will be disregarded.   8 Mo. Rep. 342.

2 The defendant's refusal to permit the plaintiff to perform his contract, the latter being in no fault, is regarded as equivalent to a performance for the purpose of maintaining an

Pond vs. Wyman.

action. The contract price is the measure of the plaintiff's damages, unless the defendant, by evidence, shows that the damage actually sustained, is less than the price agreed upon.

3. When the defendant prevents the plaintiff, without any fault of his, from performing his contract, it is almost impossible to lay down any rule for reducing the damages below the contract price, that will be comprehensive enough to embrace all cases, and yet be particular and special enough to be of any practical utility. To the extent that the time of the plaintiff, which would have been required to perform his contract, has been employed in business, not more laborious, and equally profitable, it is evident he would not be injured by a violation of the contract; yet, to give him the full benefit of his contract, he must be entitled to the difference in advantage, in ease and profits between the service he was to perform, and the business substituted for that service, although his whole time may have been employed. If a portion only of the time was so employed, then the same rule will apply to the reduction for such portion, and the contract price will furnish the scale of compensation for the time unemployed. But, if for any of the time unemployed, offers of employment, within the range of his general occupation, and in the same regoin, were made to him, upon reasonable terms, such offers are to be regarded as equivalent to business engaged in and performed, and should have the same effect in reducing the damages.

## APPEAL from St. Louis Court of Common Pleas.

### STATEMENT OF THE CASE.

Pond sued Wyman under the new code, for the following, among other items not denied by Wyman:

Plaintiff states, that defendant owes him $150, for making a set of plans and specifications for a school house, to be erected by defendant in the city of St. Louis, and getting in the estimates for the work thereunder.

Also, that defendant owes plaintiff $600 under a certain agreement entered into by and between said plaintiff and said defendant, for the superintending, by the plaintiff, the erection of a school house for said defendant, in said city of St. Louis, and making the plans and specifications therefor. Plaintiff says that he made the plans and sepecifications, and entered upon the superintending of the erection of the school house, under said agreement, and was and has always been willing, ready and offered to go on with the superintending, but that the defendant without any excuse therefor, and without the fault of plaintiff, refused to permit plaintiff to go on with the superintending of the erection of said school house, to the completion thereof, to the damage of siad plaintiff of $600.

In an account annexed to said petition, the above items are thus stated by plaintiff:

1848—To making a set of plans and specifications for a school building to be erected in the city of St, Louis, and getting in the estimates for the work thereunder, $150.

1849—To contract price for superintending the erection of his new school house, in the city of St. Louis; and making a set of plans and specifications therefor, $600.

Defendant, in his answer, denies that he owes plaintiff $150, as stated in the petition; also denies that he owes plaintiff $600 under any such agreement as plaintiff alleges; denies the making of any such agreement. He admits that he refused to permit plaintiff to superintend when requested to do so, because no agreement was made in relation thereto.

Plaintiff's proof tended to establish the making of a set of plans and specifications for the building, by plaintiff for the defendant, which, from a change in the plan of building, arising from defendant not getting the quantity of land he expected, were never taken or used by de-

Pond vs. Wyman.

ant, and that they were worth $150. Plaintiff's proof also tended to establish, by the statements of Wyman, that there was a verbal agreement between them, that Pond should superintend the erection of the school house at some sum between $500 and $700, the proof not showing the precise sum. One witness thought the time of defendant's statements, as to contract, were made early in the spring of 1848—Jan., Feb., or March; another thought it was April, latter part, or, perhaps, middle of April. Plaintiff's proof also tended to show; that Pond had the excavation for the foundation of the school house done, and a trench in front of the same dug; that Pond made the contract for the above work and gave directions about it, and drew orders on Wyman for the payment of the men doing the work, which Wyman paid; that Pond made a plan and specifications for the building and estimates of costs thereof. Plaintiff's proof showed the service of the following notice on defendant on the 9th of May, 1848.

"St. Louis, May 2, 1848.

Mr. Wyman—Dear Sir: The superintending of the cellar of your school house, began on the south side of Market street, opposite the court house, I have completed. I now understand that you have contracted out the work for the rest of the building, as my agreement with you is to superintend the whole work, according to the plans I made for you, (which I am and always shall be ready to do,) it is desirable that I be introduced by you to those to whom the work is let out, as the person to superintend the work. Harmony of action requires this, and I have always found it best to do this at the beginning. Please inform me by the bearer, as soon as you can, when it will suit your convenience to attend to this, and I will be ready                    Yours, &c.,        CHARLES H. POND."

The proof tended to show, that on the service of the above notice on defendant, he refused to recognize plaintiff as superintendant. The proof also showed that the building was completed about a year before the trial of the case in the court below. On the cross-examination of plaintiff's witnesses, the proof tended to show, that in the summer and fall of 1848, Pond was engaged in superintending a double building for Chambers, and some other matters, and also the repairing of Hequembourg's building, two stories high and building stores therein; that Pond's work was pretty considerably extensive; that there was much buildng in St. Louis in 1848; that Pond, in the spring of 1848, got on slowly with Hequemburg's building, and seemed to have too much work on him; that an experienced builder and architect ought to be able to superintend six or eight buildings at the same time, if not too large, and that it would take plaintiff one or two hours a day, probably, to have superintended the building.

Defendant's proof tended to show that the school house was erected by Wm. Fulton, by contract with Wyman; that Fulton commenced it in April, 1848; that when he commenced it, the excavation was pretty much made, though a foot or more had to be dug out on on c side, to suit the building; that at the time of Fulton's commencement, no building materials were on the ground; that a plan specifications, the form of which was used by Pond, corrected by Wyman and copied by Wyman's brother, were furnished to Fulton and by which the school house was pretty much built, though one wall had to be made thicker than the specification required, as it was thought unsafe to build so large a building according to the specification; that Pond was not on nor around the building from its commencement till its completion; that $30 or $40 would be a fair charge for Pond's plan specifications. Defendant's proof also tended to show, that at the time the excavation was commenced by Pond, about March, 1848, Wyman had not decided the mode of building; that when Pond informed Wyman that he had begun the excavating, defendant expressed surprise and objected; that Pond replied that a hole must be dug any how; that finnally Wyman consented that Pond might go on with the excavation, but distinctly said to him it had nothing to do with superintending the building. Defendant's proof also tended to show, that at interviews between Pond and Wyman, in April, 1848, while the excavation was going on and nearly completed, there appeared to be no agreement between Pond and Wyman about superintending the building; tha Pond claimed none, but seemed anxious to get an agreement for superintending; that the object of those interviews was to compare and select plans from those made by Pond, Barnett, Vodges and others, and to decide upon the mode of building. Whether by having a superin-

tendent, or by letting out the job by contract; that at the time of these interviews Wyman was undecided which of these modes he would adopt; that soon after these interviews, Wyman was negotiating with and employed Fulton to erect the building by contract.

At plaintiff's request the court gave the following instructions:

1. If the jury believe from the evidence, that a contract, such as is alleged in the petition, was made between Wyman and Pond, and that Pond was always ready and willing to perform his part thereof, but Wyman refused to permit Pond to do so, without any fault on the part of Pond, then Pond is entitled to recover the contract price and interest from the completion of the building, unless the defendant has proved to the satisfaction of the jury that the plaintiff did not actually sustain any damages from said breach of contract.

If the jury believe from the evidence, that Pond made a set of plans and specifications at the request of Wyman, according to a certain quantity of land to be built upon, stated by Wyman, and that Wyman did not use them because he could not get the quantity of land, then Pond is entitled to recover the value of the same.

To the giving of which defendant excepted. The court, of its own motion, gave the following:

3. If the jury believe from the evidence, that a contract, such as is alleged in the petition, was made between Wyman and Pond, and that Pond was always ready and willing to perform his part thereof, but that Wyman refused to permit Pond to do so, without any fault on the part of Pond, then the right of the plaintiff to recover the price stipulated in the contract, cannot be defeated, nor the amount reduced, except by defendant's showing, that during the erection of the building, Pond was so engaged in other work as to be unable to perform his part of the contract, or that sufficient work of the same kind was offered him to occupy his time, or that he engaged in other work or that other work of the same kind was offered him, which work or offers of work were in place of or would have occupied the time lost by the breach of the contract alleged in the petition in this case.

4. If the jury believe from the evidence, that the plaintiff was not out of employment by reason of the refusal of the defendant to let him go on with the alleged contract, but that his time was fully occupied, and that the compensation agreed upon was no more than a fair equivalent for the labor and time necessary to be used by the plaintiff, in performing the contract, then the plaintiff is entitled to no more than nominal damages for the refusal of defendant.

5. The jury are instructed, that if they find from the evidence, that a contract was made with plaintiff by defendant, to draw plans and superintend the building proposed to be erected on Market street, and that the defendant subsequently refused to permit plaintiff to go on and superintend the said building, the measure of damages is not necessarily the amount agreed to be paid for such superintendence, but such damages as plaintiff may have sustained under the circumstances of the case, but the measure of damages will be the price stipulated to be paid by the contract, unless the defendant show that the plaintiff has not actually sustained damages to that amount, or that if he had accepted offers for similar services, which were made to him, he would have lost nothing by the breach of contract, or have lost a less amount than that stipulated in the agreement.

To the giving of which, defendant excepted. The court, also, refused the following instructions, asked by defendant:

6. The damages in the case are to be ascertained by the loss of employment and loss of profits on the contract, and if the jury believe the plaintiff was not out of employment by reason of the refusal of defendant to let him go on, but that his time was fully occupied, and the compensation agreed upon was no more than a fair equivalent for the labor and time necessarily to be employed, plaintiff is not entitled to any more than nominal damages by reason of such refusal.

7. The jury are instructed, that if they find from the evidence, that a contract was made with plaintiff by defendant, to draw plans and superintend the building proposed to be erected on Market, and that the defendant subsequently refused to permit plaintiff to go on and super-

Pond vs. Wyman.

intend the said building, the measure of damages is not necessarily the amount agreed to be paid for such superintendence, but such damages as plaintiff may have sustained under the circumstances of the case.

To the refusal to give which, defendant excepted.

The jury found for the plaintiff the sum of $598 78. The following motion for a new trial was filed:

Defendant, by his attorney, moves the court to set aside the verdict and judgment herein, and grant him a new trial for the following reasons:

Because of the misdirection of the jury by the court in regard to the law of the case, and the rule of damages:

Because the court refused instructions, asked by defendant, that were law and should have been given:

Because the court erred in giving instructions asked by plaintiff, and in giving instructions of its own.

Because the verdict of the jury was against the evidence and without evidence:

Because the damages found by the jury were excessive, exhorbitant and oppressive:

Because the ruling of the court, relieving the plaintiff from proof of his damages, and throwing on defendant the burden of showing by proof that plaintiff had sustained no damages was not law and was a surprise on defendant:

Because plaintiff's petition is so vague, uncertain and indefinite that it does not apprise defendant what is claimed by it, and was calculated to mislead and did mislead defendant:

Because defendant was required to go to trial during the absence of the attorney engaged to try the case, who was, at the time, in the midst of a trial in the circuit court:

Because of other errors and irregularities in the proceedings and trial.

Which motion the court overruled, and defendant excepted and appealed to this court.

## Gray, for appellant, maintains:

1. That plaintiff below failed to make out a case that would entitle him to recover more than for the actual labor done by Pond. He proved no damage or loss of time after his discharge. The burden of establishing damages rested with him. The presumption of damage, equal to the contract price, does not arise on showing the simple fact of discharge, without further affirmative evidence that plaintiff sustained loss.

In those cases where the courts have imposed on defendant the burden of reducing the damages below the contract price, the proof has shown, affirmatively, either that plaintiff was out of employment, or had lost time, &c.: Byrd vs. Boyd, 4 McCord's Rep., 246; 2 Denio, 609. Or, that the pleadings have admitted the contract and breach, involving these facts: Webb vs. Coonce, 11 Mo. R., p. 9.

The plaintiff had not made a proper case to which to apply the rule of damages which he invoked. He should have shown affirmatively, that he had faithfully performed, on his part, up to the time of prevention, and then have shown, affirmatively, after the discharge that he was thrown out of employment or had lost time; which facts he failed to show: 11 Mo. Rep., 609, 612.

On the proof, as it stood before the jury, the first instruction asked by plaintiff ought not to have been given. It was not law for this case, on the evidence. The testimony showed that Pond had performed some services under the alleged contract, and the value of these he was entitled to recover. But this instruction tells the jury that they must find for plaintiff the full contract price, unless defendant showed that plaintiff has sustained *no* damages *at all*. It left no discretion to the jury to find a less sum than the contract price, even if they might believe from the evidence that plaintiff's actual damage was really much less than that sum.

The only alternatives put to the jury were, either to find for defendant, or, in finding for plaintiff, to find the whole contract price. Under this, if the jury believed that Pond was en

Pond vs. Wyman.

titled to recover the value of his time, for digging the cellar, making plans and specifications, and for nothing more, they would be positively bound to find the full contract price. By it they are not permtited to assess such sum, less than contract price, as they might believe from the evidence plaintiff was entitled to as damages. It placed the case on erroneous issues to the jury, and was calculated to mislead and must have misled them.

The third instruction was also erroneous and calculated to mislead the jury. It asserts the proposition, that if the jury find the contract to have been made, and that defendant discharged plaintiff without fault, &c,, that then, without any proof by plaintiff that he had lost a day or a dollar, they must find the full contract price, unless defendant showed that all of plaintiff's time was occupied, or that other work was offered to plaintiff which would have occupied all his time. .Plaintiff did not prove that he was idle or out of employment at all, in consequence of his discharge, and the only proof as to how much of plaintiff's time it would take to superintend the building, was the conjecture of Foster, that it would take one or two hours a day, or that an experienced person might superintend six or eight houses at the same time. On this evidence the third instruction required defendant to account for all of plaintiff's time; when, in fact, by being discharged, he could have lost but one or two hours a day. And the evidence not showing that if the plaintiff had superintended defendant's building, his whole time would have been occupied; this instruction was clearly wrong in this case    The evidence not showing that Pond, in fact, lost any time, or if so, how much, it was error to require defendant to account for time lost, when plaintiff had failed to prove what time, if any, was lost.   The evidence does not warrant such language; it was assumig a fact, in the case, that was not proved.

The instructions, asked by defendant, Nos. 6 and 7, should have been given. They state the law correctly, as to the measure of damages: 14 Vt. Rep. 311; 7 Hill 61; 21 Wend. 457 D. Ala. 234; 1 Devis 317, 602, 606; Lee vs. Ashbrook, 13 Mo. Rep., decided at last term.

The court should have granted a new trial, for reasons stated in the motion therefor.

The true rule of damages is the loss sustained by plaintiff, and this loss he was bound to show: Sedwick on measure of damages 295; 17 Pick. 284; 6 Dana 352; 7 ib. 472; 8 ib. 48; 5 page 571; 6 Greenlf. R. 208; 7 ib. 51; Missouri cases, Clendennin vs. Paulsel, 3 Mo. 166; 4 Mo. 41; 7 Mo. 94; 9 Mo. 218; 10 Mo. 609; 11 Mo. 9; Bucker vs. Eddings, 7 Mo. 115.

Todd & Krum, for respondent.

1. A contract for specific personal services, at an agreed price, entitles the person employed, to the agreed price, absolutely, in case of performance, and prima facie, at least, in a case of entering upon such services, and a readiness and willingness to go on and perform them, although not performed, if not performed by reason of the employer's prohibition, without fault in the employee: 4 Mo. Reports 41–44; 7 ib. 94; 10 ib. 609; 11 ib. 9; 2 Penrose and Watts 454–461; 4 Watts and Serg. 265, 267; 2 Denis 609; 2 Vol. Smith's Lead. cases, Cutter vs. Powell, page 1 and p. 25, American notes thereto; 18 Wend. 187, Champlin vs. Rowley. And this principle of law is mutual, so that if there be part performance, and then refusal to perform the rest without the fault or consent of the employer, no recovery can be had for the past performance: 2 Mass. 147; 2 Pick. 267; 8 Ver. 54; 12 J. R. 165.

2. To prevent the employee from recovering the entire contract price, or in reducing his recovery below such price, in the case of his readiness and willingness to perform, but is prevented by his employer without any reason, the employer must show that his employee became otherwise employed in the same kind of services, or might have been, and also showed his earnings thereby, and only to the extent of such showing can he reduce the recovery below the contract price: 2 Denis 609, and cases there cited.

3. The instructions given by the court, taken together, present the law as contended for in the foregoing points, and allow the defendant all the means of defence to reduce the recovery from the contract price even down to nominal damages, that reason and authority authorize; and this is

Pond vs. Wyman.

sufficient, although any instruction taken separately, should be objectionable: 8 Missouri Reports 339-342.

4. Besides, where no evil results from an instruction, although, strictly, it may be improper, the judgment will not be reversed therefor: 10 Mo. Rep. 62-65; and where the instructions given to the jury, contain the law applicable to the facts of the case and the evidence warrants the verdict of the jury, this court will not set it aside: 12 Mo. Rep. 456.

GAMBLE, J., delivered the opinion of the court.

The only question for consideration in this case is the measure of damages which Pond should recover upon the contract for the superintendance, stated in the petition; as the other items of claim, for drawing plans, specifications, &c., are not disputed before this court.

Pond entered upon the superintendance of the erection of Wyman's school house, upon a contract, as is alleged, for a specific price, and was prevented from completing the service by Wyman, without fault on his part, although he was ready to perform his contract. The building would have required Pond's services, as superintendant, for more than a year.

The first instruction given by the court of common pleas, tells the jury that if the contract was made between Wyman and Pond, and that Pond was always ready and willing to perform his part thereof, but that Wyman refused to permit him to do so, without any fault on Pond's part, then Pond is entitled to recover the contract price, and interest thereon, from the completion of the building, unless the defendant has proved that the plaintiff did not actually sustain any damages from said breach of contract.

This instruction certainly does not express the views of the law entertained by the judge who gave it; for in other instructions, that appear to have been given of his own motion, he states the facts by which the defendant might reduce the plaintiff's damages down even to a nominal amount. If this instruction, clearly erroneous in itself, could be regarded as helped by the subsequent instructions, we would not consider it as a proper ground for reviewing the judgment, for it has been declared by this court, that where two instructions, each improper in itself, amounted to a correct statement of the law when taken together, the error in each would be disregarded: Williams vs. Vanmeter, 8 Mo. R. 342. But in that case, it is also stated, that the two instructions were not contradictory. In the present case, the first instruction lays down a rule for assessing the plaintiff's damages, totally inconsistent with that presented in other instructions, and, as the question before the

jury related entirely to the amount of damages to be recovered, the instructions are contradictory.

It is to be regretted, that the practice so generally prevails, of giving a multitude of instructions to juries, by which the danger of losing the benefit of a just judgment upon the merits, is greatly increased. A judgment will not be reversed for the refusal of instructions, if the instructions given, present to the jury a correct and full statement of the law governing the case.

In examining decided cases, upon the measure of damages recoverable upon contracts like the present, we have had occasion to remark the great plexibility of the law in adjusting the rule to the equity of each case, as it arises, so as almost to leave the case without a rule. It is, apparently, by comparing the instructions given in this case, by the judge on his own motion, with the opinion of Mr. Justice Beardsley, in Costigan vs. Mohawk and Hudson R. R. Co., 2 Denis 609, that that case has been taken by the court of common pleas, as furnishing the rule for the measure of damages in the present case. Costigan was employed by the rail road company, to superinted the road for a year, at a salary of $1500 for the year, together with the use of a dwelling house, worth $150 per annum. He commenced the services, and after two months had elapsed, he was dismissed, without fault on his part. He gave the company notice of his readiness to complete his contract, but was not allowed to proceed with its performance, and remained wholly unoccupied for the balance of the year. In the opinion of the court, it is first argued, that the plaintiff was entitled to recover the amount of the salary fixed by the contract, and the impression made by this part of the opinion is, that the amount so fixed, is to be taken as the measure of recovery. As the judge proceeds, however, he allows, that the compensation which the plaintiff might have received for other services rendered to other persons, during the time the contract existed, might be taken into consideration in reducing the damages. He also admits, that offers of similar employment, made to the plaintiff during that time, where the employment was to be in the same region, might be shown, to reduce the damages, although the plaintiff refused to be so employed.

It appears, sufficiently, from the character of the contract, that the whole time of Costigan would have been employed in performing his duties in superintending the rail road, and the application of the rule for the reduction of the damages, either by the proof of his being engaged in other business during the time, or of offers of similar work, which would have occupied the whole or a portion of the time, would

Pond vs. Wyman.

not have been difficult. But, in the present case, we have a contract which would have occupied but a few hours of Pond's time every day, to perform his duties under it; and which is, therefore, compatible with his being employed in other business, during the time contemplated by the contract. The court of common pleas, having regard to this difference between the cases, has, in the instructions given, required that the defendant should show, either that the plaintiff's time was so occupied in other business that he could not discharge his duties under the contract, or, that offers of similar work were made to him, sufficient to employ all his time; in either of which cases, he would be entitled only to nominal damages. The last instruction given, is designed to allow a reduction below the contract price, by similar evidence, although the plaintiff might have sustained more than nominal damages.

In cases like the present, the general train of decisions, while it makes the refusal of the defendant to permit the plaintiff to perform his contract, equivalent to a performance for the purpose of maintaining the action upon the contract, yet it does not allow it to entitle the plaintiff to a peremptory recovery of the contract price. It makes the contract price the measure of the plaintiff's recovery, unles the defendant, by evidence, shows that the damage, actually sustained, is less than the price agreed upon. This, we regard as a sufficient concession to the person who has violated a contract by which he was bound to pay a certain price to another, for services to be rendered. The plaintiff, who has been prevented, by the act of the defendant, from receiving the compensation agreed upon, when he is without fault, is entitled to ask a full indemnity, and the onus of reducing the recovery, is properly thrown upon the defendant. It is almost impossible to lay down any rule for this reduction, that will be comprehensive enough to embrace all cases, and yet be particular and special enough to be of any practical utility. To the extent that the time of the plaintiff, which would be required to perform his contract, has been employed in business, not more laborious, and equally profitable, it is evident that he would not be injured by the violation of the contract. Yet, to give him the full benefit of his contract, he must be entitled to the difference in advantage, in ease and profit, between the service he was to perform, and the business substituted for that service, although his whole time may have been employed. If a portion only of the time was so employed, then the same rule will apply to the reduction for such portion, and the contract price will furnish the scale of compensation for the time unemployed. But, if for any of the time unemployed, offers of employment, within the range of his general occupation, and in the same region, were made

to him, upon reasonable terms, such offers are to be regarded as equivalent to business engaged in and performed, and should have the same effect in reducing the damages. Another fact mentioned in the instructions, as affecting the rights of the plaintiff, is, that his time was so occupied as to disable him from performing his duties as superintendent; and it is entitled to consideration. If he were so engaged, under pre-existing contracts, then he ought not to recover more than nominal damages, for it would be unreasonable to permit him to make an engagement with the defendant which would expose the defendant to the constant danger of great injury in the work done upon a valuable building. If his engagement was under contracts subsequent to that with the defendant, the effect upon his claim for damages has already been stated.

It will be seen, that we depart from the rule stated in the opinion of Mr. Justice Beardsley, as the law in New York, and this is done, because we think the rule is not stated with the precision with which rules for the government of juries should be laid down, and because we differ from that court in regard to the effect of some facts which ought to influence the measure of damage. To say that certain offers of employment "might have furnished a ground for reducing the recovery below the stipulated amount" does not, in our judgment, form a sufficiently clear rule for ascertaining the measure of damage. We give force to the offer of employment, when it is within the line of the plaintiffs occupation, without requiring that it shall be similar to that contracted for.

The judgment is reversed and the cause remanded, with the concurrence of the other judges.