## OLIVER D. HICKS, Respondent, v. NATIONAL SURETY COMPANY, Appellant.

**Kansas City Court of Appeals, December 7, 1914.**

1. **CONTRACTS: Carrying Mail: Bond: Implied Contract.** Plaintiff made application to defendant to sign his bond as surety in a contract he proposed bidding for to carry the mail, back and forth, from a railway station to the post office. Bids for the contract were to be received at the post office department at Washington, D. C., and were to be closed at 4:30 p. m., December 6, 1910. Defendant's agent at Kansas City, Missouri, received an advance part payment of premium with plaintiff's bid and application for bond, and sent it to defendant at Washington when, if defendant approved the application, it would sign the bond and file it and plaintiff's bid, with that department. Defendant received the papers and declined to sign the bond, in time to have notified plaintiff in time for the latter to have procured other security and filed it with the department before bids were closed. But defendant failed to notify plaintiff and in consequence he lost the contract. It was *held* that there was an implied obligation on defendant's part to notify plaintiff of its refusal to sign his bond, and that it was liable in damages for plaintiff's loss of the contract.

2. ———: **Mail Contract: Measure of Damage: Earnings: Mitigation.** The measure of damages where a surety company's neglect to notify a bidder for a contract to carry the mail that it had refused to sign his bond caused him to lose the contract is, prima facie, the contract price, to be reduced by the expense he would have been put to in procuring and keeping wagons and teams, and what he earned at other labor during the time he would have been in the service if he had obtained the contract.

3. ———: ———: **Time for Bringing Action.** An action for damages for preventing a plaintiff from procuring a contract with the government to carry the mail may be brought before the time in which the contract was to run has expired and uncertainty and difficulty in ascertaining the damages and the mitigation of such damages is no reason for denial of the right to sue before the time has expired.

4. ———: **Contract to Manufacture: Personal Service.** There is a distinction between a contract to manufacture and a contract for personal service, and while in the former there may

be no obligation to procure other contracts in order to mitigate damages, there is such duty in the latter.

5. ————: **Avoidable Consequences: Moral Duty.** The duty to lessen the damages, where it reasonably may be done, under the rule of avoidable consequences, is a social or moral duty which the law recognizes and requires to be performed.

Appeal from Linn Circuit Court.—*Hon. Fred Lamb,* Judge.

REVERSED AND REMANDED (*with directions*).

*Frank Hagerman, E. E. Ball* and *Clyde Taylor* for appellant.

(1) Upon the whole record plaintiff is not entitled to recover, the demurrer to plaintiff's evidence should have been sustained. The declaration of law that plaintiff was not entitled to recover as requested at the close of all the evidence should have been made. The finding and judgment should have been for defendant. Hicks v. Surety Co., 169 Mo. App. 487, 9 Cyc. 95; Horton v. Ins. Co., 151 Mo. 604; Lucas v. Western Union Tel. Co., 131 Ia. 669, 109 N. W. 191, 6 L. R. A. (N. S.), 1016; Crohn v. U. C. T., 170 Mo. App. 279. (2) There were no profits to be made under the proposed contract, therefore, plaintiff has lost none. Bradner v. Powder Co., 115 Mo. App. 102; Tenzer v. Gilmore, 114 Mo. App. 210; Lally v. Campwell, 40 Mo. App. 44; Boland v. Glendale Quarry Co., 127 Mo. App. 520; Estes v. Shoe Co., 155 Mo. 577; Ross v. Pants Co., 170 Mo. App. 291; Sedgwick on Damages, sec. 667. (3) The court committed reversible error in overruling the motion to require plaintiff to elect, both at the opening of the case and at the conclusion of plaintiff's evidence. Hicks v. Surety Co., 169 Mo. App. 496; Asbury v. Hicklin, 181 Mo. 670. (4) The court erred in refusing to make each and every finding of fact and conclusion of law requested by defendant.

Sec. 1972, R. S. Mo. 1909; Hamill v. Talbott, 72 Mo. App. 22; Assurance Co. v. Tribble, 86 Mo. App. 546; Bailey v. Emerson, 87 Mo. App. 220; Fahy v. Grocery Co., 57 Mo. App. 73.

*Bresnehan & West, James E. Watkins* and *Paul D. Kitt* for respondent.

(1) Upon the record plaintiff is entitled to recover. The finding and judgment was for the right party. Hicks v. National Surety Co., 169 Mo. App. 479. (2) Under the evidence and finding the profits which would have accrued to plaintiff exceeded the judgment. Loss of profits is the correct measure of damages, and this cannot be lessened or mitigated by what plaintiff might have made outside. Crescent Manufacturing Co. v. Nelson Manufacturing Co., 100 Mo. 325; Hicks v. National Surety Co., 169 Mo. App. 479; 13 Cyc. 161; Gabrin v. Brick Co., 57 Mo. App. 528. (3) The defendant's motion to elect came too late after answer and issue joined. Barrie v. United Railway Co., 138 Mo. App. 640. (4) Defendant waived its motion to elect by pleading to the merits and going to trial. After answer and trial it is too late to consider any objection less serious than want of jurisdiction, and failure to state facts constituing a cause of action. Dakan v. Mercantile Co., 197 Mo. 270; White v. Railroad, 202 Mo. 539.

ELLISON, P. J.—This is an action for damages in which plaintiff recovered in the trial court the sum of seven hundred dollars.

The United States Government, in the year 1910, desired to let a contract for carrying the mail to and from the post office and to and from the railway trains at Chillicothe, Missouri. To that end it advertised for bids which were to be made and filed in the office of the Post-Master General at Washington by 4:30 p. m. of

December 6, 1910. The service was to be for four years, beginning July 1, 1911, and ending June 30, 1915. Bids were to be accompanied by an application and a bond with surety. Defendant was a surety company acceptable to the department. On November 28, 1910, plaintiff made out his bid in the sum of $1485 per year and his application to defendant to become his surety and signed a bond furnished by defendant and delivered these papers by mail to defendant's agent at Kansas City, Missouri with $10 advance on premium. The latter delivered them by mail, to defendant at Washington and it refused to sign the bond in time to have notified plaintiff at Chillicothe for him to have gotten other surety and filed his bid and bond before bids were closed at Washington. Plaintiff's bid was the lowest and the evidence tended to show that if he had gotten it filed in time he would have secured the contract. Thus failing to get the contract, he brought this action in damages for loss of net profits.

This is the second appeal; the first is reported in 169 Mo. App. 479, where a full history of the case will be found. On the first appeal we held, in an opinion by Judge TRIMBLE, that there was no evidence of an express contract to sign the bond, or if rejected, to notify plaintiff. We further held that defendant, having received plaintiff's application for a bond and ten dollars of his money, with full knowledge of the date for closing the reception of bids, there was an implied contract on its part, if it refused to sign, to notify plaintiff of its refusal, if it could reasonably do so, in time for him to get other sureties and file with the department before bids were closed.

In finding that defendant could have notified plaintiff in time for him to have secured other surety and filed his bid, we concede that we are requiring promptness of action by the parties concerned; but since we think the evidence tends to show it could reasonably

have been done we feel justified, in the circumstances, in saying that there should have been promptness on defendant's part; and on account of personal interest, to say nothing of the tendency of the evidence in that line, in assuming that plaintiff would have been quick to serve that interest.

This conclusion brings us to the consideration of the measure of damages. The action was brought the 18th day of August, 1911 and was tried, the last time, the 8th of October, 1913. As already stated, plaintiff's contract of service began the 1st of July, 1911, and would have ended the 30th of June, 1915, from which it appears that he begun the action near four years before the service was to terminate and the case was tried near two years before that time.

The contract expressly required plaintiff's personal service, and it therefore seems to us that, by analogy, the measure of damage is the same as where a servant employed for a definite time is wrongfully discharged before the time expires. In the latter case, where the action is also brought before the time expires, and the contract treated as continuing, the amount agreed to be paid for the full period is primafacie, the damage suffered; but it may be reduced by the sum afterwards earned by plaintiff before trial and which he can reasonably earn after trial up to the date of the end of the employment. There is great difference of opinion among the courts which have considered the question, but the rule just stated has been laid down by the Supreme Court of this State (Ream v. Watkins, 27 Mo. 518; Lambert v. Hartshorne, 65 Mo. 549; Boland v. Glendale Quarry Co., 127 Mo. 520, followed by the Courts of Appeals in Halsey v. Memrath, 54 Mo. App. 341 and Miller v. Boot & Shoe Co., 26 Mo. App. 61) and it is supported by a great number of authorities in other jurisdictions, of the highest standing. The most recent discussion of the subject was by this court in Ross v. Grand Pants Co.,

170 Mo. App. 291. The objection to this rule (as pointed out in those cases *contra*) is its uncertainty, since it cannot be known but that the servant who sues immediately on his discharge, may die the next day after he obtains damages for the full term of service; nor can it be known, in case he lived to the end of the service, how much he would have earned at other work; may be as much, or more, than he would have received under his contract. But this objection has been met by the suggestion that difficulty of proof, or estimate of loss, ought not to affect the right; and that the same difficulty of exactness—the same partial lapse into conjecture, is found in many actions, notably future loss in personal injury. On this subject the Supreme Judicial Court of Massachusetts, said: "The plaintiff's cause of action accrued when he was wrongfully discharged. His suit is not for wages, but for damages for the breach of his contract by the defendant. For this breach he can have but one action. In estimating his damages the jury have the right to consider the wages which he would have earned under the contract, the probability whether his life and that of the defendant would continue to the end of the contract period, whether the plaintiff's working ability would continue, and any other uncertainties growing out of the terms of the contract, as well as the likelihood that the plaintiff would be able to earn money in other work during the time. But it is not the law that damages which may be larger or smaller because of such uncertainties are not recoverable." [Cutter v. Gillette, 163 Mass. 95.] The Supreme Court of New Jersey expressed itself thus: "The trial judge properly instructed the jury as to the legal principles which should govern them in making up their verdict by directing them that they should first consider the amount the plaintiff would have earned if he had remained in the defendant's employ for the full term of the contract; that they should then take into consideration the fact

that after his discharge his time became his own, and that it was his duty to utilize that time in endeavoring to obtain employment elsewhere; that they should further consider what the reasonable prospect of his getting such employment was, in view of his age and state of health, and deduct from the total amount payable under the contract such sum as in their judgment the plaintiff might reasonably earn up to the expiration of the time for which the contract was yet to run.'' [Moore v. Central Foundry Co., 68 N. J. Law, 14.] The Supreme Court of Indiana said that, ''The suit may be brought at any time after the breach, either before the expiration of the term of the contract, or afterwards, within the statutory limit. But whether brought before or after the expiration of the term of the contract the measure of the damages is the same. If brought during the term, the difficulty in ascertaining the amount of the damages sustained may be greater than if the action had been deferred until the term of the contract had expired. But the difficulty and uncertainty in such cases are not greater than in many others, where a permanent and continuing injury is alleged, and the plaintiff is confined to a single action for his damages.'' [Hamilton v. Love, 152 Ind. 641.]

It being no objection to plaintiff's action that he brought it for damages for loss of profits for the full period of his service, before that period had expired, we proceed to see whether defendant was fairly dealt with in making up the final result which was carried into the judgment appealed from. The contract price plaintiff was to receive, per year, was $1485. We must first estimate what it would have cost plaintiff to earn that sum. In estimating the cost we must, of course, assume that he would comply with his proposed contract with the government; for compliance with his contract was necessary to his receiving compensation for his service. The contract required three wagons to

be kept and one extra. These wagons would have cost him $85 each and would total the sum of $340. It does not appear how many horses were to be kept, but the evidence shows that at least two would be necessary and that they would have cost $240, with $40 for harness. On this outlay there would be interest and depreciation.

To operate this property and maintain the service, the folowing expense would have been incurred:

| | |
|---|---|
| For feeding, keeping and care of two horses, per year, ................................$ | 360 |
| Horse Shoeing ............................... | 28 |
| Painting and Repair of Wagons .............. | 45 |
| Repair of Harness, Wagon Grease, etc. ........ | 25 |
| Premium on Bond, per year ................. | 40 |
| Hired Help ................................. | 840 |
| Interest on Investment of Wagons, Horses and Harness, ............................... | 37 |
| Depreciation of Value of this property, per year, | 62 |
| Total. ....................................$ | 1437 |

In this estimate of items and depreciation there is a slight overcharge from the fact that at each year's depreciation after the first, there would be a small difference in the per cent to be allowed for such depreciation. But this we think is fully made up to plaintiff by our omitting to include in his expense the uniforms required by the specifications. So subtracting this amount from the bid he would have made, or the contract price he would have received for his services, and stopping there, it would leave his damages for the four years in the sum of one hundred and ninety-two dollars.

But it appeared from the evidence in plaintiff's behalf that in not peforming this service for the government, he went at other work. He testified that he "went to work driving a wagon" for a considerable

time and after that he "went into the news business" and that in these employments he had made from forty to forty-five dollars per month. This, taking the lowest figures, would make his earnings $480 a year, or $1920 for the four years he was prevented from serving the government. This, without reference to the itemized expense in the latter service, is more than he was to receive for that service and his loss has been made up, with considerable excess.

But plaintiff insists that his case does not belong to that class which require the injured party to minimize the damage in favor of him who has broken the contract. He insists that his case falls under the rule stated in Crescent Mfg. Co. v. Nelson Mfg. Co., 100 Mo. 325. We think that case wholly unlike this. The contract there was that a barbed wire manufacturing company would manufacture barbed wire out of plain wire to be furnished by the defendant company. The defendant company broke the contract by failing to furnish wire and it was held that evidence in mitigation to the effect that the plaintiff company could have made other engagements for manufacturing wire was not admissible. That the relation of master and servant did not exist, and that plaintiff "had the right to make as few or as many other contracts as it saw fit whilst executing the contract with defendant and it is entitled to the profits which it might have made on this particular contract." In that case the distinguishing feature found in the case at bar is lacking. Here *personal* service was to be rendered at a stated annual recompense, and under the cases already cited, the loss of compensation agreed upon for that service is to be lessened by what was earned by the service in which plaintiff engaged. It is sometimes said that the party who, without fraud, has broken his contract, has no right to demand that the other party set to work for him to lessen the loss he has occasioned. Perhaps, as a personal right, distinguished from a legal right,

the delinquent party has not; but the law makes the demand for him. The law requires the party not at fault to arrest the consequences of the wrong if he, reasonably, can do so. In Miller v. Mariner's Church, 7 Greenleaf 51, this is called a moral of social duty, which the law recognizes. In Shannon v. Comstock, 21 Wend. 457, after discussing the duty of the master of a canal boat to take other freight at hand, in place of that defaulted by another party, in order to lessen the damage the court said, "The reason and justice of these remarks are open to continuous illustration in the affairs of men." And that "Idleness is in itself a breach of moral obligation." And if one "continues idle for the purpose of charging another, he superadds a fraud, which the law had rather punish than countenance." This view is again asserted in Keckscher v. McCrea, 24 Wend. 304, where it was held to be the duty of the master of a vessel to accept from a third party the same character of freight which another had failed to ship as he agreed.

In Frazier v. Clark, 88 Ky. 260, Clark was to saw all the timber on a certain tract of land, and should saw exclusively for Frazier until the timber was exhausted. The latter refused to let him go upon the land; but Clark utilized his mill by sawing for others at such prices as to balance the loss by Frazier's breach, and it was held that nominal damages were all that could be recovered. The court said that if Clark was permitted to recover the entire profit that could have been realized on the contract with Frazier, and have run his mill continuously with the same profit for others, he is permitted to make double profits. Other illustrations, from the rule of avoidable consequences, might be had in great number, if it were necessary.

Our conclusion is that plaintiff has not suffered substantial damage by reason of defendant's failure to notify him of rejecting his bond and the judgment will be reversed and the cause remanded with directions to

enter judgment for him for one cent. The costs of this appeal to be taxed against him. All concur.