Lee **COONIS** and Winfred Fortner, d/b/a
Coonis and Fortner, a Co-Partnership,
Appellants,

v.

**CITY OF SPRINGFIELD**, Missouri, a
Municipal Corporation, Respondent.

No. 46799.

Supreme Court of Missouri,

Division No. 2.

Dec. 8, 1958.

Motion to Modify or for Rehearing or
Transfer to Court en Banc
Denied Jan. 12, 1959.

Keith V. Williams, Springfield, B. H. Clampett, Springfield, for appellants.

John B. Newberry, Springfield, for respondent.

BOHLING, Commissioner.

Lee Coonis and Winfred Fortner, partners doing business as Coonis and Fortner, sued the City of Springfield, a municipal corporation, for "loss of profits" in the amount of $19,000 occasioned by the alleged breach by the defendant of a contract for the collection of garbage in said city. The case was tried in Webster County upon a change of venue. The jury returned a verdict for $19,000. Defendant's motion for new trial was sustained on the grounds that the $19,000 damages awarded rested in speculation in that, briefly stated, the jury did not consider as items of cost of performance from the date of the breach of the contract to its termination (1) the reasonable value of plaintiffs' own services and (2) depreciation, the wear and tear entailed on plaintiffs' equipment in completing the contract. Plaintiffs appeal from the order granting a new trial.

Plaintiffs and defendant entered into a contract May 25, 1953, for the collection of garbage in defendant city by plaintiffs for a period of one year commencing June 1, 1953, with a provision for an extension of the contract for an additional three years, for an annual consideration to plaintiffs of $50,210.

In November, 1955, the city extended its boundaries, practically doubling its corporate area by taking in approximately seventeen square miles of territory. The contract of May 25, 1953, did not provide for additional compensation to plaintiffs for the collection of garbage within the annexed territory. Following plaintiffs' extension of service to the annexed territory, conferences were had with respect to a modification or change in said contract.

On July 16, 1956, defendant, by resolution of its City Council, authorized the City Manager to enter into an agreement with plaintiffs mutually rescinding the contract of May 25, 1953, said agreement to provide that all parties should be relieved of all further obligations under said contract.

Defendant advertised for bids for a supplemental or new contract for the collection of garbage within its corporate limits, said bids to be submitted at 9:00 o'clock a. m., Monday, July 30, 1956. The city was divided into four districts by lines extending east and west, with District I the northernmost and District IV the southernmost district, for the purpose of receiving the bids. Division Street, hereinafter mentioned, is an east-west street located in the north part of District II.

On July 26, 1956, plaintiffs and defendant, by its City Manager, entered into a "Mutual Agreement of Recission" which, after preliminary recitals, provided (emphasis supplied):

"Now, Therefore, for and in consideration of the mutual covenants and promises herein contained, it is agreed and understood by and between the parties hereto that in the event the City of Springfield, Missouri, shall accept the bids for a supplemental or new garbage collection contract at the time of opening thereof, i. e., 9:00 o'clock, Monday, the 30th day of July, 1956, said contract dated May 25, 1953, pursuant to Special Ordinance No. 11647, shall ipso facto become null, void, and of no legal effect at 9:00 o'clock a. m., the 6th day of August, 1956, and the parties to said contract hereby release, acquit and discharge the other of and from any and all responsibility or liability thereof or arising therefrom.

"It is Further Agreed and Understood by and between the parties hereto that *in the event the City of Springfield*, Missouri, *shall not accept the bids* for a supplemental or new garbage collection contract *at the time of opening thereof at 9:00 o'clock a. m., Monday, July 30, 1956, then* the City of Springfield agrees to assume the responsibilities and duties of garbage collection in that portion of said corporate limits North of Division Street, extending East and West, and *said contract of May 25, 1953,* pursuant to Special Ordinance No. 11647, *shall remain in full force and effect*, pursuant to the terms therof, the duration thereof, and the full consideration thereof *for that portion of said corporate limits South of Division Street*, extending East and West."

Bids were submitted by Henry Carr and Max L. Murray for the collection of garbage in the several districts into which the city had been divided. On the morning of July 30, 1956, at approximately 9:00 o'clock, said bids were publicly opened and read by the City Manager. He announced that he considered the bids excessive; that he would not take any action on them at that time, and that he would submit them for the advice of the

City Council that night, because they were higher than originally anticipated. He testified a continuation of the Coonis and Fortner contract would effect a substantial saving and the situation merited careful study.

The City Council, on July 30, 1956, by resolution ratified and adopted the agreement of July 26, 1956, entered into by the City Manager and Coonis and Fortner.

Following the City Manager's report on the bids received, the City Council, on motion, referred the matter back to the City Manager for decision. On July 31, 1956, the City Manager, on behalf of the city, entered into new contracts with Mr. Carr and with Mr. Murray for the collection of garbage within the city.

The instant action, based on the "Mutual Agreement of Recission" of July 26, 1956, was filed August 3, 1956. Plaintiffs' theory was that time was of the essence of said contract and defendant breached the contract by not accepting or rejecting the bids submitted for garbage collection at 9:00 o'clock a. m., Monday, July 30, 1956, and by thereafter entering into contracts with Carr and Murray for the collection of the garbage and preventing plaintiffs from performing their said contract of July 26, 1956.

The sole affirmative defense submitted by defendant was that plaintiffs waived defendant's breach of the contract. The submitted issues were found by the jury in favor of plaintiffs and against defendant. Many material facts were stipulated; for instance: It was stipulated that plaintiffs "were at all times ready, willing and able and did tender performance of their alleged contract with defendant City of Springfield, Missouri, on or about Monday, the 6th day of August, 1956."

Plaintiffs' contract provided for an annual payment by defendant of $50,210, or $4,184.16 a month. Plaintiffs performed their contract until August 7, 1956, and defendant paid plaintiffs $539.87 for their

performance in August, 1956. Plaintiffs would have been entitled to receive $41,-301.73 ($41,841.60 less $539.87) had they continued to perform the contract until its termination on May 31, 1957.

Plaintiff Fortner placed the loss of profits at $19,000. He said his partner, Coonis, took care of all the business. Plaintiffs testified they had seven garbage trucks, and five trucks with two men to a truck would be required to collect the garbage south of Division Street. Plaintiff Coonis testified that he estimated the partnership profits for the ten months ending May 31, 1957, at $1,900 to $2,000 a month; that during June and July, 1956, the partnership paid for labor $2,673.21, gasoline and oil $940.23, parts, tires, etc., $154.43, and insurance per truck per year was $175; and that he estimated the cost of operating a truck at $80 to $85 per week. Our estimate, based on his figures, is somewhat higher per truck per week. Plaintiffs' brief proceeds on the basis their expenses would be approximately $2,000 a month. However, Coonis also testified that following the extension of the city boundaries in November, 1955, the partnership was not making any money, was about breaking even, and that during June and July, 1956, they were not complying with the contract in that they were making only two instead of the three "pickups" a week required under the contract.

The conduct of the plaintiffs under the original contract of May 25, 1953, and their testimony warranted a finding that they, in addition to their employees, were to personally engage in the performance of the contract of July 26, 1956; that plaintiffs had been working full time and received their compensation out of the profits of the contract, and that their time was "worth money." In arriving at the $19,000 loss of profits plaintiffs gave no consideration to the value of their services as an expense in the performance of the contract. Consult, Annotation 50 A.L.R. 1397.

Defendant contends since plaintiffs failed to present any evidence as to what the

reasonable value of their services would have been for the remaining ten months of the contract, that it was impossible for the jury without resort to speculation to find for plaintiffs in the sum of $19,000, and the court properly granted a new trial.

In Clark v. Smalley Tie & Timber Co., Mo.App., 180 S.W. 435, 437 (stressed on the issue by plaintiffs), defendant contracted with plaintiffs, sawmill operators, to make ties from timber owned by defendant for a specified price per tie, and to deliver the ties to a stated point for a consideration of four cents a tie. After the ties were manufactured, defendant prevented plaintiffs' delivering the ties and plaintiffs sued for the four cents per tie for delivery. The court considered the measure of plaintiffs' recovery was "the profit of the bargain," i. e., so much of the full contract price as was their clear profit after deducting expenses. (Defendant also states this is the proper measure of the damages. Dement v. McNail, Mo.App., 281 S.W. 128 [1, 4]; second appeal, Mo. App., 4 S.W.2d 831, 832 [4].) The court then pointed out that plaintiffs' completion of the contract would require expenses connected with "using teams, wagons, and other equipment, as well as laborers"; and, with respect to labor, stated:

"So far as the work involved in delivering the ties could be performed by plaintiffs personally, or without expense to them, nothing should be deducted unless it be shown that plaintiffs did or could have earned something at similar employment during the same period."

We are of opinion the foregoing states the applicable rule with respect to plaintiffs' loss of wages under the instant record (see also Ryan v. Miller, 52 Ill.App. 191, 194, same case, 153 Ill. 138, 38 N.E. 642, 643), and the issue is not governed by the general rule applied to construction contracts (Sides v. Contemporary Homes, Inc., Mo.App., 311 S.W.2d 117, 120 [6, 7], also cited by plaintiffs). Consult 1 Restatement, Contracts, § 346, p. 578, f.

With respect to the loss of reasonable compensation for services to be performed by plaintiffs in the completion of the contract, the burden was upon defendant to show in mitigation of damages that plaintiffs did earn or reasonably could have earned wages pending the expiration of the contract. Pond v. Wyman, 15 Mo. 175, 183; Puller v. Royal Casualty Co., 271 Mo. 369, 196 S.W. 755, 762 [4]; Tate v. School District No. 11, 324 Mo. 477, 23 S.W.2d 1013, 1027 [17], 70 A.L.R. 771.

Defendant's assertion that plaintiffs' testimony shows "they could have worked at other jobs and made money during the ten months" is, as we read the record, not affirmatively established and removed from speculation; and herein defendant's cases are distinguishable. In Hicks v. National Surety Co., 185 Mo.App. 500, 172 S.W. 489, 491, the basis of plaintiff's suit was the loss of profit on a contract to haul mail between the post office and trains of a city for four years. Plaintiff's evidence was to the effect his damages for the four years were $192, but it also established that he went into other work and would earn for the four years $1,920. In the circumstances a $700 judgment for plaintiff was reversed with directions to enter a judgment for nominal damages of one cent. In Hume v. Miller Hatcheries, Mo.App., 51 S.W.2d 179, 181, plaintiff's evidence disclosed that soon after his discharge he entered into a partnership for the sale of automobiles but there was no evidence to show what his earnings were up to the termination of the contract sued on. The true measure of the damages being plaintiff's actual loss, the court considered plaintiff's damages could only be established by showing what he had earned. The case was remanded for a new trial. Smalley v. Wunderlich, Mo.App., 62 S.W. 2d 919, was not concerned with the instant issue. We find no substantial evidence of record tending to establish that plaintiffs

earned or could have earned wages pending the termination of the contract for consideration in mitigation of damages.

The situation differs with respect to depreciation—wear and tear on the equipment which would have been used during the remaining ten months of the contract. Plaintiffs testified they made no allowance for the expense of depreciation on their equipment as the equipment had been fully depreciated out of the profits of the contract by June 1, 1956. Defendant was not bound by plaintiffs' bookkeeping methods, and the wear and tear on plaintiffs' equipment for the ten months was an item of expense in arriving at plaintiffs' loss of profits. Rudolph v. Johnson, 127 Cal.App. 451, 16 P.2d 152, 156; Singer Mfg. Co. v. W. D. Reeves Lumber Co., 95 Ark. 363, 129 S.W. 805, 806; Lahman v. Reed, Tex.Civ.App., 47 S.W.2d 647, 648 [5]; and see Hicks v. National Surety Co., supra. In Hume v. Miller Hatcheries, supra, a judgment for $150 was remanded where plaintiff's evidence established he had other work pending the termination of the contract but failed to show his earnings therefrom that the jury might arrive at his actual loss without speculation.

Damages for loss of profits caused by a breach of contract are recoverable. "But this court and our courts of appeals have been strict in their evaluation of the sufficiency of the evidence warranting a recovery of damages for loss of profits. Beginning with the early case of Taylor v. Maguire, 12 Mo. 313 * * *, this court uniformly has refused to permit a jury to speculate as to what might be probable or expected profits as an element of damages. * * * Under the facts and the rulings of those cases, anticipated profits are recoverable only when they are made reasonably certain by proof of actual facts which present data for a rational estimate of such profits." Spruce Co. v. Mays, 333 Mo. 582, 62 S.W.2d 824, 828 [6]; Tnemec Co. v. North Kansas City Development Co., Mo., 290 S.W.2d 169, 174 [5, 6].

Plaintiffs' petition prayed damages for loss of profits in the amount of $19,000, and they testified to loss of profits in that amount. Plaintiffs' damage instruction sought a recovery of the amount plaintiffs would have received under the contract less their reasonable costs and expenses in performing it, not exceeding $19,000. The jury returned a verdict for $19,000, the maximum amount of damages claimed and submitted. Plaintiffs should be bound by their pleadings and submission. Plaintiffs' evidence is not free of conflict. The assumption of profits of $1,900 a month has for its foundation Coonis' testimony of expenses for the months of June and July, 1956. However, he also testified they were not fully complying with their contract and were not making a profit after the extension of the city boundaries in November, 1955, which included said months of June and July, 1956, and we are not impressed with plaintiffs' argument that the jury could have considered depreciation and returned a verdict for $19,000 without speculation.

The foregoing disposes of the controverted trial issues briefed for a disposition of this review. The trial court granted a new trial "on all of the issues." Plaintiffs contend the new trial should be limited to the issue of plaintiffs' loss of profits, the damages, citing Taylor v. St. Louis Public Service Co., Mo., 303 S.W.2d 608. Consult § 512.160, subd. 3, RSMo 1949, V.A.M.S. The new trial was not granted within the thirty days mentioned in § 510.370, Id. The trial court has a wide discretion in granting a new trial "as to questions of fact and matters affecting the determination of issues of fact" under § 510.330, Id. (Berger v. Podolsky Bros., 360 Mo. 239, 227 S.W.2d 695, 697 [2], 16 A.L.R.2d 964), and this court has been liberal in deferring to a trial court's action in this respect (De Maire v. Thompson, 359 Mo. 457, 222 S.W.2d 93, 97). From our review of the instant record we are not inclined to interfere with the action of the trial court.

529

The order granting a new trial is affirmed.

BARRETT and STOCKARD, CC., concur.

PER CURIAM.

The foregoing opinion by BOHLING, C., is adopted as the opinion of the court.

All concur.

On Motion to Modify or for Rehearing or Transfer to Court En Banc

PER CURIAM.

Appellants, plaintiffs below, have filed a motion to modify, or for rehearing or transfer to Court en Banc, accompanied by an offer of a remittitur of $2,000 (based on $200 a month depreciation for the ten months the contract was to continue) for the entry of a judgment for $17,000 as of the date of the verdict. Respondent has filed no suggestions in opposition.

Appellants' offer of remittitur ignores appellants' receipt of $539.87 for their performance of the contract in August, i. e., until August 7, 1956.

Appellants, as ground for their position, say the court overlooked an answer of appellant Coonis on cross-examination to the effect he thought, the best he remembered, appellants "allowed a little, but not much, about two hundred dollars a month" for depreciation on their trucks. Appellant Coonis on direct examination named the spare parts (including, among other equipment, 24 tires) appellants had on hand to perform the contract and testified appellants placed no valuation on such equipment; had fully depreciated and written off appellants' trucks for garbage collection; and, based upon appellants' records and his experience, he arrived at his estimate of profits for the remaining ten months of the contract. And, on cross-examination he testified one of the reasons

appellants would have made $19,000 profits was because appellants' equipment was all written off on their tax books, had been depreciated out since June 1, 1956; and he had counted nothing off for the use of the tires on hand because appellants "didn't have to buy them"; "had already bought them"; had "paid for them out of the garbage contract."

Appellant Fortner testified that no depreciation on the trucks had been allowed in estimating the $19,000 profits.

Appellant Coonis' testimony is contradictory and conflicting, one version tending to prove the issue, the other tending to disprove it; and the jury should not be permitted to speculate or guess which version should be accepted. Steele v. Kansas City Southern R. Co., 265 Mo. 97, 115, 175 S.W. 177, 181 [2]; Adelsberger v. Sheehy, 332 Mo. 954, 59 S.W.2d 644, 647 [6, 8]; Stephens v. Thompson, Mo., 293 S.W.2d 392, 394 [1]; Thaller v. Skinner & Kennedy Co., Mo.App., 307 S.W.2d 734, 738.

The record is to the effect appellants' estimate of profits did not take depreciation of their equipment into consideration because appellants had fully depreciated the equipment out of the profits of the contract by June 1, 1956. Appellants must have so considered the record. We find no mention in their brief of the testimony now stressed. They filed no reply brief. Their points on this issue were: "The jury, under the law, was not required to consider depreciation separately, if at all." "The jury, under the evidence, could have considered depreciation and yet have returned a verdict for $19,000.00." We find the following in their argument: "And, last, it should be kept in mind that plaintiffs' equipment consisted of five trucks, '47 to '51 models, which already had been completely depreciated. Under this evidence, the jury simply *could* have found that there was no depreciation cost allocable to the contract for the ten-month period in question. If so, there was no occasion for a depreciation

deduction." As stated in the Steele case, supra [265 Mo. 97, 175 S.W. 181]: "Neither an attorney nor his client, the litigant, ought to be allowed to play fast and loose with courts."

A point, argument, or theory advanced *for the first time in a motion for rehearing or to transfer is generally dis-regarded.* State ex rel. Cole v. Matthews, Mo., 274 S.W.2d 286, 292 [9]; Ford v. Wabash R. Co., 318 Mo. 723, 300 S.W. 769, 778 [15, 16]; Phippin v. Missouri Pac. R. Co., 196 Mo. 321, 93 S.W. 410, 418; Campbell v. St. Louis Public Service Co., Mo.App., 35 S.W.2d 49, 53 [5].

Appellants' motion is overruled.