## EDWIN S. PULLER v. ROYAL CASUALTY COMPANY, Appellant.

### Division One, July 2, 1917.

1. **EVIDENCE: Company's Business State: Identification of Secretary's Statement,** A statement purporting to be a summary of the secretary's statement of the receipts and disbursements of the company during a definite period, where no witness testifies that either the statement or summary is correct, is not admissible in evidence.

2. ———: ———: **Contract of Employment: Future Success.** It can not be laid down as an unqualified rule that the future success or failure of a corporation just beginning business cannot affect the validity or fraudulent character of a contract of employment entered into at the beginning of such business. Under some circumstances a contract promising a salary out of all proportion to the company's capital and its business prospects might, as a matter of law, be declared unreasonable, unjust and oppressive, indicating upon its face fraud and a breach of trust. Under others, it would not be declared unreasonable or void without the strongest, evidence of fraud on the part of the officers of the company. Under others, the consideration cannot be confined

271 Mo.—24

to the contract alone, but if alleged to be unreasonable and fraudulent proper evidence of the company's capital, surplus, and all other facts and circumstances is competent in support of the allegation.

3. CONTRACT OF EMPLOYMENT: Agreed on Before Incorporation of Company: Fraudulent: Burden of Proof. A contract of employment, agreed upon by officers of an existing insurance company about to be consolidated with a new company to be oganized, that being holders or controllers of a majority of the stock of the new company, they would elect themselves and others directors and that the board of directors would elect them officers at designated salaries, is prima-facie valid, and the burden of proving it fraudulent and void is on the company when it is sued for the balance of the salary due under the contract; and such fraud is not shown if all the persons connected with the two companies are shown to have fully understood what the expectations of the officers were and the directors voted to fix their salaries at the terms stated in the prior agreement between the officers.

4. ———: Longer Than Term of Directors. A corporation may make a contract of employment for a longer period than the term of office of its directors. Fraud is not to be inferred from a contract employing a stockholder for a term of four years to be the counsel and manager of the claims department of an insurance company whose directors were elected annually.

5. ———: Discharge: Reduction of Salary Made in Mutual Consideration With Others: Amount of Recovery. Where the plaintiff and the other general officers concluded that the business of the corporation did not justify the salaries called for by their contracts and mutually agreed with each other to relinquish a certain per cent thereof and from that time forward all of them collected their salaries monthly less said reduction, the plaintiff, upon being wrongfully discharged before the expiration of his contract, cannot recover for past months the amount of such reduction thus made in consideration of the mutual reduction of the others.

6. ———: Discharge Before End of Period: Amount of Recovery for Subsequent Months: Interest. Where plaintiff by the terms of his contract of employment was to receive a definite sum per month, to be paid in monthly installments, he can, upon his discharge without cause before the end of the contract period, recover for the installments not due at the date of the judgment, in an amount equal to their present worth on that date, calculated at six per cent annual interest. Their present worth means the amount of each monthly installment reduced by interest to its present value.

Appeal from St. Louis City Circuit Court.—*Hon. George C. Hitchcock,* Judge.

REVERSED AND REMANDED (*with directions*).

*F. H. Bacon* for appellant.

(1) Directors of a corporation sustain a fiduciary relation and are trustees, as well as agents, for the stockholders. They are bound to exercise the utmost good faith and contracts between the directors and one of their number are always subject to review and if not absolutely void are voidable if unreasonable, unfair, or produced by the influence of the director contracted with. 9 Cyc. 787; 3 Cook, Corp., sec. 658; 1 Morawetz on Corp., sec. 516; Land Co. v. Case, 104 Mo. 572; McNab v. Mfg. Co., 62 Hun, 18, 133 N. Y. 687; Davis v. Davis, 120 N. Y. Supp. 350, 135 App. Div. 206; Carney v. Ins. Co., 162 N. Y. 473, 49 L. R. A. 471; Beers v. Ins. Co., 66 Hun, 75, 20 N. Y. Supp. 788; Higgins v. Lansingh, 154 Ill. 301; Adams v. Burke, 201 Ill. 399; McNulta v. Bank, 164 Ill. 427. If the vote is really the influence of the officer benefitting thereby, it is void. Greathouse v. Martin, 100 Tex. 99. (2) The burden of proof is on a director who has had dealings with his fellow directors of a corporation to show that the contract is fair. If it is not fair, it is incapable of ratification. 2 Thomp. on Corp., sec. 1231; Laird v. Lubricator Co., 153 Mich. 52, 17 L. R. A. (N. S.) 177; Camacho v. Bank Note Co., 2 App. Div. 369, 37 N. Y. Supp. 725; 3 Cook, Corp. (7 Ed.), sec. 649; Pollitz v. Railroad, 207 N. Y. 113. (3) The contract sued on is materially different from that authorized by the resolution of the directors in that it provided that plaintiff should only give a portion of his time to the service of the company. (4) The alleged contract was clearly made in order to forestall the action of any future board of directors. It covered a period of four years, whereas the directors making the contract were elected for one year only. This contract under the circumstances was in pursuance of a conspiracy on the part of plaintiff and his two associates in their own interest and was therefore void, or, if not void, was voidable. (5) The court wrongfully excluded the statement of the business of the company which was offered for the purpose of showing the unreasonableness of the salary voted

plaintiff and as a circumstance tending to show that the
contract sued on was not entered into in good faith.  (6)
The judgment is excessive, even admitting that the con-
tract sued on was valid.  (a)  The original agreement pro-
vided that while the salaries were to continue for the
three parties, plaintiff, Sutton and Pickrell, for four
years, the salaries might be reduced if in their judgment
it was necessary to enable the company to pay the divi-
dend.  The three after consultation, by mutual agree-
ment, did reduce their salaries, made a gift of the excess
to the company, and yet in the first count of his petition
the plaintiff claims that the payment of the reduced rate
was not binding upon him.  If the reduction was made by
the three in mutual consideration of the reduction by the
others, or if the difference rebated was a gift to the com-
pany, it cannot be recovered in this action.  Riera v.
Metal Co., 134 App. Div. (N. Y.) 497.  (b)  Plaintiff was
discharged March 8, 1911, at which time the alleged con-
tract had two years to run.  He brought suit March 16,
1911, eight days thereafter, and claimed the entire salary
for the two years unexpired term of the contract at the
full rate, together with interest from the date of the filing
of the suit on the theory that although his salary was pay-
able in monthly installments the discharge made the en-
tire amount at once due and payable.  No allowance was
made for earnings of plaintiff during the future period
and it could not be known what the amount of such earn-
ings would be.

·*Schnurmacher & Rassieur* for respondent.

(1)  While the services of a director in the line of his
duties as such are presumed to be gratuitous, the directors
may bind the corporation by a contract for employment
of an officer, agent or employee, notwithstanding that such
employee is also a director.  Coal Co. v. Watson, 107 Mo.
App. 451; Taussig v. Railroad, 166 Mo. 28; Funsten v.
Com. Co., 67 Mo. App. 557; 2 Thompson on Corp. (2 Ed.),
sec. 1747; Wickersham v. Crittenden, 110 Cal. 332; Clark
v. Coal Co., 86 Iowa, 436,  (2)  The presumption of law is
that the president of the corporation was acting within his

authority and that the contract was regular and valid. Jones v. Williams, 139 Mo. 1; Coal Co. v. Watson, 107 Mo. App. 451. (3) Appellant relies on the agreement between the three promoters to fix, or to attempt to fix, their salaries, subject to the decision of the board of directors, as being unlawful in itself. Such is not the law. Authorities cited under point one; Fillbrown v. Hayward, 190 Mass. 472. (4) A corporation may, by formal vote of its board of directors, or by any suitable act, the same as an individual, ratify an agreement made by its promoters. 3 Cook on Corp. (6 Ed.), sec. 707, p. 2212; Bond v. Pike, 111 N. W. (Minn.) 916; Pittsburgh Co. v. Quintrell, 91 Tenn. 693; McDonough v. Bank, 34 Tex. 309; Battelle v. Northwestern Co., 37 Minn. 1889; Browning v. Company, 5 H. & N. 856; Mesinger v. Mesinger Co., 44 N. Y. App. Div. 26; Chase v. Redfield Co., 12 S. D. 529; Coal Co. v. Watson, 107 Mo. App. 451. (5) A corporation may make a valid contract of employment for a longer period than the tenure of office of its directors. Jones v. Williams, 139 Mo. 1. A contract for "permanent employment" is not illegal. Revere v. Copper Co., 15 Pick. 351; Hobbs v. Elec. Co., 74 Mich. 550; Pennsylvania Co. v. Dolan, 6 Ind. App. 109; Lead Co. v. Kimlin, 47 Neb. 409. A contract that employment should be steady and constant as long as plaintiff should do his work properly, the consideration for which, in part, was a settlement for personal injury, is valid. Harrington v. Cable Ry., 60 Mo. App. 223; Retzer v. Packing Co., 58 Mo. App. 264. A contract for employment for life under the above conditions was upheld in Boggs v. Laundry Co., 86 Mo. App. 616. Even a contract of a corporation imposing an obligation in perpetuity will be upheld, where the intention to do so is unequivocally expressed. Printing Co. v. Compendius Co., 150 Mo. App. 391. (6) A corporation cannot take advantage of an agreement among its officers to accept a reduction in salary, which agreement has not been communicated or assented to by them. Thompson Co. v. Brook, 14 N. Y. Supp. 370. Such agreement must be with the company and not among the promoters. Bank v. Elliott, 55 Iowa, 104. The payment of a part of an undisputed debt

cannot liquidate the whole. Head v. Ins. Co., 241 Mo. 403; Wetmore v. Crouch, 150 Mo. 671; Swofford v. Goss, 65 Mo. App. 55; Klausmann v. Schoenlau, 32 Mo. App. 357. (7) Respondent's damage for breach of his contract is, prima-facie, the amount promised to be paid him by the contract. Tenzer v. Gillmore, 114 Mo. App. 210; Ross v. Pants Co., 170 Mo. App. 291; Boland v. Quarry Co., 127 Mo. 520. (8) The court rightfully excluded the alleged statement of the defendant, first, because it was not identified by any witness nor testified to as being correct; and, second, because the future success or failure of a corporation just beginning business cannot affect a contract entered into at the beginning of such business. Whether it turns out to be advantageous or disadvantageous to the company is immaterial. Trendly v. Traction Co., 241 Mo. 73.

WOODSON, J.—The plaintiff brought this suit in the circuit court of the city of St. Louis against the defendant, to recover a balance of $1,233.86 salary, alleged to be due him under a certain contract made by them on March 22, 1909, and for the sum of $12,203.22 damages, claimed for an alleged breach of said contract. The petition was in two counts; the first was for the recovery of the salary, and the second for the damages for the breach thereof. The trial resulted in a judgment for the plaintiff for the sums sued for and interest, amounting to $14,316.-42. After ineffectually moving for a new trial and arrest of judgment, the defendant appealed the cause to this court.

The first count of the petition in substance alleged that the plaintiff and defendant, on March 22, 1909, entered into a written agreement whereby the latter employed the former as general counsel and manager of its claim department for a period of four years from said date, at $350 per month for the first year, $450 per month the second year, and $500 per month for the third and fourth years; that immediately after the contract was made he entered upon the performance of his duties and continued to perform them until March 7, 1911; that according to

the terms of the agreement, defendant became indebted to him for such services in the sum of $9,400.53, on account of which it paid him $8,166.67, and judgment is prayed for the balance of $1,233.86.

The second count alleges the same contract and performance by plaintiff until March 7, 1911, and on that day the defendant wrongfully discharged him, without cause, and a refusal to further permit plaintiff to render the services covered by the contract. The prayer was for judgment in the sum of $12,203.22.

The answer consists of a general denial; an admission that the contract set forth in the petition was signed by defendant's president, J. D. Sutton; a denial that it was authorized by the board of directors in the form in which it was executed; that the directors were elected for only one year; that notice of a special meeting of the board, to be held March 22, 1909, was given to all of the directors, except Fred Opp; and that the object of the meeting stated in the notice was, among other things, for the purpose of fixing compensation of officers and employees. That the contract was executed by plaintiff and said Sutton in pursuance of a conspiracy and unlawful agreement between the plaintiff and said Sutton and divers other officers and directors at that time of the defendant, whereby the earnings of said company were to be absorbed by them individually, in fraud of the stockholders under the guise of salaries. That defendant at the time of the execution of the alleged contract was an accident insurance company with a capital stock of one hundred thousand dollars, and a surplus of twenty-five thousand dollars, with certain directors, nine in number, who had been selected and elected by the plaintiff and one Pickrell and Sutton, either owning or controlling the majority of the stock. That the directors had been elected for a period of one year from the 20th day of March, 1909; that a special meeting of the board of directors was called to be held on March 22, 1909, of which notice was given to all the directors except one, the object of the meeting being as stated for the purpose of fixing compensation of officers and employees. That previous to the incorporation

of said company plaintiff, Sutton and Pickrell entered into an agreement in substance reciting their intention of organizing the company and it was agreed between the said three persons that they should be directors and officers of the company and control its affairs through themselves and other persons, who should be nominated as directors by them and who should be subservient to and dominated by them; that said Sutton was to be president for four years and the salary to be drawn from the said company for a period of four years by him, as president, should be at the rate of $300 per month; that said Pickrell should be secretary, and plaintiff general counsel for four years and during the first year of said term the salary of said Pickrell as secretary and said plaintiff as counsel for the same length of time should be at the rate of $350 per month, and at the rate of $450 per month each during the second year of said term, and at the rate of $500 per month for the third and fourth years of said term. Said agreement contained the following provision: "Provided, however, that the foregoing salaries may be reduced if in the judgment of the parties hereto a reduction be necessary, or advisable, in order to pay a reasonable rate of dividends on the capital stock of said company."

Appellant averred that said agreement was entered into for the purpose of forestalling the action of any future board of directors by making a contract for the term of four years, and binding the corporation by action of its board of directors elected at the organization of said company for a period of one year by the dominating influence of the three persons mentioned; that on March 22, 1909, in pursuance of the said notice of said special meeting, eight directors were present, one not being present, nor notified, and that at that meeting resolutions were adopted in pursuance of the said agreement; that in the resolutions so adopted no provision was made for the reduction of salaries in case a dividend was not earned on the capital stock: At this meeting it was resolved that the company enter into a contract with plaintiff as manager of the claim department and counsel for four years from March 22nd, at a salary of $350 per month for the first

year, $450 per month for the second year and $500 for the third and fourth years of said term, payable monthly. Such resolution was adopted in pursuance of the said conspiracy. That thereupon the alleged contract was executed, but that it was not in accordance with said resolution in that it provided that plaintiff should only devote as much time as should be necessary to the discharge of said duties, the remainder of his time, if any, to be devoted to his private interests; that all the said salaries were grossly excessive and unreasonable, especially so far as plaintiff was concerned, in that the said company was in receipt of a gross income not exceeding on an average $5,000 per month, including interest; that the claims made against the company were usually for small amounts, averaging three or four per day and not requiring expert attention; that only three or four suits per year were brought against the company and usually other attorneys were employed for the conduct thereof; that the services called for in the said contract were not worth at a fair valuation more than $75 per month, which plaintiff knew at the time the contract was entered into; that plaintiff engaged in other business during the time covered by said contract. The answer also avers that the method of conducting the business of his department by plaintiff was detrimental to the company; that for the reasons stated the contract was null and void, because substantially made by a trustee with himself; because the amount agreed to be paid was grossly excessive; that it was unauthorized by the company, and that on March 7, 1911, plaintiff's services were dispensed with.

A cross-petition was filed which practically sets up the same facts, and also the alleged contract sued on by plaintiff; avers that $8,166.67 was paid plaintiff under the contract; that said contract was void and asked judgment for said sum against the plaintiff.

The pleadings and evidence introduced by the plaintiff made a prima-facie case for him; and thereupon the defendant assumed the burden of proving the charges of the answer and cross-bill.

On cross-examination the plaintiff identified a preliminary contract dated February 26, 1908, entered into between the plaintiff, Sutton and Pickrell, which was afterwards offered in evidence by defendant. The witness stated that it was intended by the parties to this agreement to control the company by getting proxies; that at the first meeting for organization the three persons named in this preliminary agreement held proxies for 216 shares. Mr. Pickrell owned forty shares, Sutton owned 335, and plaintiff had 123, making a total of 714 shares out of the total number, 1,000. The plaintiff and Mr. Pickrell were at that time officers of an existing association, known as the Royal Fraternal Union, which had on hand about $16,-000 in cash and a going business which was to be taken over by the Royal Casualty Company. The witness did not figure that the good will of the Royal Fraternal Union had been secured by his and Pickrell's efforts, nor that the Royal Fraternal Union had any good will, although it had agents, policyholders and assets. The plaintiff testified that in April, 1910, the corporation ceased to pay him the full salary of $450 per month. The contract was at that rate and $350 was paid. The plaintiff said: "I made a reduction voluntarily; it was done at my suggestion and the suggestion of Mr. Pickrell. Mr. Sutton at first objected, but finally agreed to make a reduction in his salary. The difference between what was paid to me during those months of April, May and June, up to and including March, 1911, is the amount sued for in the first count of the petition, but not altogether."

The defendant's evidence showed that approximately $18,000 was the amount of expenses of the company during the organization period and fifteen per cent was the amount allowed by resolution of the incorporators for commissions on the stock. Each subscriber paid on each share of stock $100 and $25 on account of surplus, and Mr. Sutton, Mr. Pickrell and witness each kept fifteen per cent of their individual subscriptions because authorized by the resolution. The plaintiff was chairman of the organization committee. There were thirteen incorporators, of whom five or six out of the thirteen took stock or

subscribed stock.  The witness admitted that under the resolution adopted by the directors nothing was said about his giving only as much time to the company as was necessary, but that provision was included in the contract because there was talk to that effect at the meeting of the directors.

The defendant offered in evidence the charter of the defendant, which was in the usual form.  Also the record of the first meeting of the stockholders, at which certain by-laws were adopted, and called attention to two certain by-laws in particular, one of which provides for the annual meeting of the shareholders to be held on the first Tuesday of February each year beginning in 1910, at which nine directors shall be elected to hold office for one year or until their successors are elected; that the regular quarterly meetings of the board of directors shall be held on the first Tuesday of February, May, August and November, and that special meetings of the board may be called at any time without notice by unanimous consent, or otherwise by ten days' notice.  By another of the by-laws it was provided that the board of directors shall have the authority to contract with officers and employees for their services and fix their compensation.

Defendant offered in evidence the record of the first stockholder's meeting showing the election of nine directors (the number having been reduced from thirteen to nine), and the record of the meeting of the board of directors at which officers were elected, which shows that in accordance with the previous understanding Mr. Sutton was elected president, plaintiff first vice-president and counsel, and Mr. Pickrell secretary and treasurer, for a period of one year.  The defendant offered in evidence the record of the adjourned meeting of the board of directors held March 22, 1909, which was a special meeting, at which three resolutions were adopted, the first that a contract be entered into with Pickrell as superintendent at a salary of $350 per month for the first year, $450 per month for the second, and $500 per month for the third and fourth years.  This motion was made by Director Hellmuth, seconded by Van Nort, Mr.

Pickrell not voting. The second resolution authorized a contract with plaintiff as manager of the claim department and counsel for a period of four years from the 22nd day of March, 1909, at a salary of $350 per month for the first year, $450 per month for the second year, and $500 per month for the third and fourth years. This motion was made by Director Pickrell, seconded by Van Nort, Mr. Puller not voting. The third resolution fixed the salary of Mr. Sutton as manager of commercial agencies and agents for four years at a salary of $300 per month, Mr. Sutton not voting. Fred Opp testified that his name appeared as a director, but he had never accepted the office; that he had received no notice of the meeting, did not know there was a meeting; that he was out of the city much of February and March.

The defendant offered in evidence the agreement of February 26, 1908, between Pickrell, Sutton and Puller. Also the record of the meeting at which the services of the plaintiff were dispensed with, held March 7, 1911.

The defendant offered in evidence a statement of the business of the company for the years 1909 and 1910, which was admitted by plaintiff to have been compiled by the secretary, for the purpose of showing the business of the corporation and the proportion of the salary of plaintiff to the volume of business done by the company, and the unreasonableness of the contract. Plaintiff objected to the statement as immaterial, irrelevant and incompetent, which objection was sustained and the defendant excepted. This statement shows that for the first twelve months that the company did business, being the last nine months of 1909 and the first three months of 1910, the total premium receipts of the company amounted to $41,-944.80; that the company during the same time received $6,135.73 for interest and $18,976.07 from miscellaneous sources, the latter amount probably being that turned over by the Royal Fraternal Union. That the agents' commissions for the same period amounted to $8,200.86, the claims to $14,421.22, the officers' salaries to $12,333.34, and the miscellaneous expenses to $18,891.12. The total

disbursements amounted to $53,746.54, and the total receipts to $67,056.60.

For the second year, namely, the last nine months in 1910 and the first three months of 1911, the premium receipts were $69,201.84, the interest $6,327.22, the miscellaneous $624.15, making the total receipts $75,153.21. During the same period the claims amounted to $28,618.-68, the agents' commissions to $14,881.12, the officers' salaries to $11,080.12, the miscellaneous expenses to $27,090.-74, or total disbursements of $81,670.66, leaving a deficit.

For the second year the net premium receipts, less agents' commissions, amounted to $54,320, the claims amounted to $28,618, leaving net receipts of $25,702, against which were miscellaneous expenses of $27,090, leaving toward the payment of officers' salaries of $11,000 the interest receipts of approximately $6,326.

In rebuttal Mr. Pickrell testified that he mailed a notice of the directors' meeting, March 22d, to Fred Opp; that he and Mr. Puller in order to avoid future misunderstanding had a mutual understanding in reference to the different positions they would hold, the services they would perform and what was believed to be a reasonable consideration. This was to be submitted to the board of directors for their approval; that witness was anxious to have a position with some assurance as to the future and did not wish to give up his position as general manager of the Royal Fraternal Union until he was sure of his position with the Royal Casualty Company; that he had no doubt in submitting the matter of salaries to the board of business men that they would approve of his request, but he didn't know that the board of directors would do whatever the wishes of himself and Mr. Puller were. He had reason, however, to believe that their instructions would be approved. Mr. Puller, Mr. Sutton and witness had stock enough to control the company. That Mrs. Largue was Mr. Puller's wife's aunt and had ninety shares of stock, and Mr. Chas. B. Puller was a brother and had ten shares.

I have practically taken the view of the evidence as presented by counsel for appellant in his brief.

I.    We will first consider the action of the trial court in sustaining the plaintiff's objection to the introduction of the statement of the business of the company for the years 1909 and 1910, made by the secretary, and offered by defendant.

Secretary's Statement.

The objection to the introduction of this evidence was: "First, because it was not identified by any witness nor testified to as being correct; and, second, because the future success or failure of a corporation just beginning business cannot affect a contract entered into at the beginning of such business."

We will dispose of these two grounds of objection in the order stated. Attending the first: Counsel has not called our attention to the testimony of any witness showing that said statement was correct, nor have we been able to find in the record any such evidence; and for that reason alone we are of the opinion the court properly sustained the objection and excluded the statement. Moreover, the records of the company showing its receipts and disbursements were not introduced or offered in evidence, and the statement only purported to be a summary of those records and clearly was inadmissible in evidence in the absence of testimony tending to show it was a correct compilation of the records. This, it seems to me, is elementary.

As regards the second ground of objection mentioned, there is some doubt as to its soundness in the broad unqualified way in which it is stated. The language is: "The future success or failure of a corporation just beginning business cannot affect a contract entered into at the beginning of such business. Whether it turns out to be advantageous or disadvantageous to the company is immaterial."

We are not willing to lend our concurrence to that broad and unqualified contention of counsel. A contract for salaries of officers and agents made with one company might be reasonable, fair and just, while made with

another, it might be unreasonable, unjust and oppressive, indicating upon its face fraud and a breach of trust on the part of the officers and agents acting for the company. For instance, had this company been capitalized for only $5,000, with no business at the time the contract was entered into, no court would or should hesitate to declare as a matter of law that it was unreasonable, and fraudulent as to the company and stockholders; but suppose the company had been capitalized for $5,000,000, was a going concern, with a large surplus, at the time this contract was entered into, then I apprehend no court would declare it unreasonable and void as a matter of law, or without the strongest kind of evidence of fraud on the part of the officers acting for the company. But in the case at bar, where the capital of the company is $100,000, with a going business and a surplus of $25,000, at the time the contract for salaries was made, and where the conceded annual income of the company for the first and second years of its business career was from $65,000 to $75,000, and its disbursements were from $55,000 to $80,000, the contract cannot when considered alone be declared void or voidable as a matter of law; but those facts should be considered with all the other facts and circumstances in evidence in determining whether or not the contract was fraudulent.

For the reasons stated, had counsel for defendant introduced evidence tending to prove that the statement of the business of the company for the years 1909 and 1910 offered in evidence, was correct, then it would have been admissible in evidence. [State v. Findley, 101 Mo. 217.]

And under those facts had the trial court made the same ruling it did, then that ruling would have been erroneous; but as previously ruled as there was no evidence introduced tending to show the statement was correct, the court properly excluded it.

II. The chief ground assigned by counsel for defendant for a reversal of the judgment goes to the whole

case, and is in legal effect that the preliminary agreement

Contract of
Employment:

Preliminary
Agreement.

made between plaintiff, Pickrell and Sutton, the three promoters of the company, mentioned in the statement of the case, agreeing to elect themselves as three of the directors and officers of the company, and fixing or attempting to fix their respective salaries as president, secretary and general counsel before the organization was perfected, rendered void the contract sued on.

The facts surrounding that question, as I gather them from the record, are briefly these: At the time of and for some time prior to the organization of the defendant company, there existed in the city of St. Louis a similar company, the Royal Fraternal Union, a going concern, with $16,000 in cash on hand, which was to be taken over by the defendant company. Pickrell and the plaintiff were officers in that company, and in view of the organization of the new company and the passage of the old from business, they, with Sutton, agreed by said contract to vote for each other for directors and officers of the new company and to fix their respective salaries for the sums previously stated.

It seems that Mr. Pickrell was the originator of this scheme, and assigned as his reason therefor that, in view of the old company going out of business, with which he and plaintiff were connected, and the contemplated organization of the new company through their and Sutton's efforts as promoters, he thought it was but just and proper that they should have an understanding in advance regarding those matters; and testified upon that subject "that he and Mr. Puller [the plaintiff] in order to avoid further misunderstanding had a mutual understanding in reference to the different positions they would hold, the services they would perform and what was believed to be a reasonable consideration; this was to be submitted to the board of directors for their approval; that he was anxious to have a position with some assurance as to the future and did not wish to give up his position as general manager of the Royal Fraternal Union until he was sure of his position with the Royal Casualty Company."

That at the first meeting of the stockholders of the defendant company nine directors were elected, three of whom were the plaintiff, Pickrell and Sutton, they owning or controlling and voting a majority of the stock of the company; and at the first meeting of the board of directors, eight being present, Sutton was duly elected president, Pickrell secretary, and the plaintiff general counsel of the company, each for one year, and thereafter the board of managers, by means of by-laws or resolutions adopted, prescribed or designated the duties or services which each of those three gentlemen were to perform for the company and authorized the company to enter into contracts with them to perform those duties for a period of four years, at the salaries before stated.

At least, presumably, which has not been contradicted, Sutton, Pickrell and plaintiff were elected directors of the company in pursuance to the preliminary contract before mentioned; also that they did what they could to elect each other to the offices mentioned, and aided in prescribing their respective duties and fixing their respective salaries, save that none of them voted for his own contract of employment. The presumption mentioned is strengthened by the following testimony of Pickrell: "That he had no doubt in submitting the matter of salaries to a board of business men that they would approve of his request, but he didn't know that the board of directors would do what the wishes of himself and Mr. Puller were. He had reason, however, to believe that their instructions would be approved."

Assuming all of those matters to be true, then how stands the case? Can the court, as a matter of law, or find from those facts alone, that the contract of employment of plaintiff for a period of four years as general counsel of the company was fraudulent and void?

Counsel for defendant advance and discuss several elementary legal propositions which cannot and are not disputed by counsel for plaintiff, to the effect that directors of a corporation sustain a fiduciary relation as trustees of the company, as well as agents for the stockholders; that they should exercise the utmost good faith in

271 Mo.—25

making contracts between one of their number and the company; that if the act of the officer is controlled by a benefit to himself and not to the company, then the same is voidable, subject to review; and in a proper proceeding all damages done to the company by reason thereof, may be recovered of such unfaithful and fraudulent officers or agents.

But counsel for defendant does not stop there, but broadly insists that in all such transactions the burden of proof is on the director who has had dealings with his fellow directors of a corporation to show that the contract or other transaction was fair and reasonable, and cites in support thereof the following authorities: 2 Thomp. on Corp., sec. 1231; Laird v. Michigan Lubricator Co., 153 Mich. 52, 17 L. R. A. (N. S.) 177; Camacho v. Hamilton Bank Note & Eng. Co., 2 App. Div. (N. Y.) 369, 37 N. Y. Supp. 725; 3 Cook, Corp. (7 Ed.), sec. 649; Pollitz v. Wabash Ry. Co., 207 N. Y. 113.]

After a careful reading of these authorities I am of the opinion that they do not support the broad and unqualified proposition contended for by counsel.

They are directed more at contracts and transactions of corporations prohibited by law, *ultra vires,* and lying *without* the scope of their authority. In such cases those authorities hold, and properly so, that the "burden is always upon the directors to show that the transaction was fair, in good faith, open and aboveboard;" and some of those cases also hold that it is wholly immaterial whether such transactions are made in good faith or not, they are absolutely void, and all damages sustained by the company on account thereof may, by proper action, be recovered from the directors. I also concur in that view of the law; but that is not this case. Here the directors were clearly acting within the scope of their authority as authorized by the charter and prescribed by the by-laws of the company; nor is there any statute or other law of this State prohibiting the company from making such a contract as the one here in controversy.

The question here is not that the company had no authority to make the contract mentioned, but was it made in good faith and valid, or was it fraudulent and void?

The great weight of authority in this State and elsewhere is to the effect that a contract of this character, made by the company with one of its directors, though the legal action of the board of directors, is binding until nullified upon the ground of fraud. [3 Cook on Corp. (7 Ed.), sec. 649, 2015; Fort Payne Rolling Mill v. Hill, 174 Mass. 224; Bevier Coal Co. v. Watson, 107 Mo. App. 451; Taussig v. St. Louis & Kirkwood Ry. Co., 166 Mo. 28; Funsten v. Funsten Com. Co., 67 Mo. App. 559; 2 Thompson on Corp. (2 Ed.), sec. 1747; Wickersham v. Crittenden, 110 Cal. 332; Clark v. Am. Coal Co., 86 Iowa, 436; Fillebrown v. Hayward, 190 Mass. 472.]

That there is no direct evidence of fraud in this case is practically conceded by counsel for defendant; but he insists that fraud may be inferred from the fact that the plaintiff, Pickrell and Sutton, the three promoters of the company, entered into the preliminary contract before mentioned, agreeing thereby to fix or attempt to fix their salaries.

As previously stated, this contract was open and above board, in writing, and made in view of the dissolution of the old company, with which two of them were officers, and the transfer of its business and assets to the new; this naturally suggested to them the importance of having their relation with the new company settled, as far as practicable before their relations with the old were severed. This was also equally important to the present or new company; it was but fair and just that it should know in advance the terms and conditions of the transfer; the character of the business and assets to be transferred to it, and that it have in advance some just conception of the character and extent of the entangling alliances it was proposed it should enter into with the old company and the promoters of the new.

That contract or agreement was nothing more than a notice to all concerned at to what the three promoters expected to demand from the new company, which of course, had to be passed upon and approved by the board of directors before it could have any binding force upon the company. [Jones v. Williams, 139 Mo. 1. ]

And no one can read this record and reach any other conclusion than that all parties connected with the two companies fully understood the positions of these three gentlemen and what their expectations were in the premises.

I have personally known of a number of similar cases, and have heard and read of many more, and the course taken in this case is the same as was taken in those, save this is the first time I ever heard of the promoters putting this proposal in writing; that fact alone, however, should not militate against them if made in good faith for the purpose before stated, but should be commended.

Counsel for defendants also insists that fraud should be inferred from the fact that the contract of employment of plaintiff was for a period of four years, while the directors and officers of the company are elected annually, thereby forestalling the action of any future board of directors.

This argument is unsound. In fact, if the law should prevent a corporation from employing persons for more than one year, it would find itself very much handicapped in procuring the best men to serve it; but few such would contract for so brief a period. The ablest and best would seek longer terms of employment, and not be bothered with hunting a new position every year and running the risk of being thrown out of work at the end of that time.

But be that as it may, the law is not so written.

This court has held that a corporation may make a contract of employment for a longer period than the term of the office of the directors. [Jones v. Williams, 139 Mo. 1.] In that case the board employed an editor

of a paper for a period of five years, and this court held the contract valid.

Moreover, there are respectable authorities holding that a contract for *permanent employment* is not illegal. [Revere v. Boston Copper Co., 15 Pick. 351; Hobbs v. Brush Elec. Light Co., 75 Mich. 550; Pennsylvania Co. v. Dolan, 6 Ind. App. 109; Carter White Lead Co. v. Kinlin, 47 Neb. 409.]

We are therefore of the opinion that the circuit court properly found the question of fraud in favor of the plaintiff.

III. Counsel for defendant insists that the judgment is excessive, and for that reason it should be reversed and remanded.

The undisputed evidence shows that some time prior to the discharge of the plaintiff, he, the general counsel, the president and secretary of the company concluded that the business of the same did not justify the payment to them of the respective salaries they were being paid for their services, and they then and there mutually agreed with one another to relinquish a certain per cent of their respective salaries and give the same to the company, and from that time forward to the day of plaintiff's discharge from the service of the company, all of them collected their salaries less said reduction.

Voluntary Reduction: Mutual Consideration With Others.

Notwithstanding those facts, after the plaintiff had been discharged he sued for and recovered not only for his unearned salary for the balance of the four year term, as damages, but also for the amount of said reduction he had previously given to the company.

In my opinion the law is well settled, in principle at least, that where the reduction was made by the three in mutual consideration of the reduction of the others, it cannot be recovered back.

This exact point was presented in the case of Riera v. Salo Art Metal Co., 134 App. Div. (N. Y.) 497, and that court held that a recovery could not be had.

That is the only case directly in point to which my attention has been called; but nevertheless, the principle is well settled in that class of cases where several persons in consideration of mutual agreements sign subscription papers for stock in a corporation to be formed, or donations to churches, expositions, etc., of which the books are full.

In that regard, the judgment is clearly excessive.

IV. It is also insisted that the judgment is excessive for the reason that the record, as stated, shows

<span style="float:left">Future Salary.</span> that: The "plaintiff was discharged March 8, 1911, at which time the alleged contract had two years to run. He brought suit March 16, 1911, eight days thereafter, and claimed the entire salary for the two years' unexpired term of the contract at the full rate, together with interest from the date of the filing of the suit, on the theory that although his salary was payable in monthly installments the discharge made the entire amount at once due and payable. No allowance was made for earnings of plaintiff during the future period and it could not be known what the amount of such earnings would be."

We will first consider the question as to the salary, and thereafter the interest.

No authority has been cited bearing upon the latter question by counsel for either party.

The general practice formerly was for the discharged employee to sue for each month's salary as it matured, or await the expiration of the entire remainder of the period for which he was employed, and then sue for the entire sum which would have been due him under the contract had he not been discharged, with the interest on each monthly installment from the time it became due under the terms of the contract; but where, as here, the suit was brought a few days after the discharge for the entire sum which would have been due him for the remainder of the term, two years, had he not been discharged, quite a different rule should prevail. This is true from the very nature of things; for instance, suppose the defendant had admitted that it discharged the

plaintiff without cause, as we have held it did, and had said to him, in good faith, notwithstanding that fact, we will continue to pay to you at the end of each and every month $500, for the period of two years, the balance of your unexpired term, as per the terms of the contract of employment; could it with any degree of plausibility, much less reason, be contended that plaintiff was entitled to one cent more? I think not; for the obvious reason that in such a case, in so far as his salary is concerned, the contract has not been broken and the $500 per month for the next two years would be every cent which could possibly become due him under the terms thereof; and if it be true in this class of cases, as all the authorities hold, that the contract is the measure of the damages to be recovered, then I am at a loss, in the absence of some law authorizing punitive damages of which I have no knowledge, to know upon what principle the entire breach of the contract by the defendant could possibly increase his damages over and above the amount fixed by the contract. The fact that plaintiff was discharged from further work before his term of employment had expired could not certainly increase his damages, for the reason that the clause of the contract requiring of the plaintiff service was placed therein for the benefit of the defendant and not the plaintiff, and if the defendant wrongfully prevented the plaintiff from further performance of those services, then the damages flowing therefrom would naturally fall upon it and not upon him; consequently, as previously stated, I am unable to see in what possible way he is damaged in a sum larger than that stated in the contract.

Some confusion has arisen as to the measure of damages in such cases, or perhaps more accurately speaking, to justly administer the damages fixed by the contract, for that is the standard of measurement, although broken by the employer, on account of a desire of the courts to formulate a rule to do speedy justice between the parties and without requiring the discharged employee, as under the old rule, to resort to the courts at the end of each month, or compel him to await the end of the time

of his employment and then sue for the entire sum due him under the contract; that rule proved to be too vexatious and expensive or too dilatory, resulting in great injustice and hardship in many cases where the employees were unable financially to wait so long.

In order to remedy those evils, the courts, by degrees, evolved the rule permitting the employee to sue upon his unlawful discharge for the amount of wages he would have earned under the contract had he been permitted to fully perform it, and fixed the damages prima facie at the amount provided for in the contract, and cast the burden upon the employer to show by evidence, if he could, that the former was not entitled to recover the full amount; for instance, if the employee had earned any sum of money after his discharge and before the trial, the employer would be entitled to a credit therefor; but if he failed to make such proof, then the employee would be entitled to recover the full amount stated in the contract.

This rule is announced in the following cases: Tenzer v. Gilmore, 114 Mo. App. 210; Ross v. Grand Pants Co., 170 Mo. App. 291; and Boland v. Glendale Quarry Co., 127 Mo. 520.

This rule, at best, is but a makeshift, and in this class of cases, where the suit is brought for the whole amount before the expiration of the term of the employment, it often works great hardship and an injustice upon the employer; for instance, he might be financially able to pay the salary monthly, extending over a period of two years, as provided for by the contract, but wholly unable to pay the entire amount two years in advance of the time provided for therein. Again, the employee might die after the rendition of judgment and before the expiration of his term, or he might procure other employment; in the former case had the suit been brought at the end of the month or of the term, the employer would only have been liable for the wages up to the date of the employee's death; and in the latter, he would have been entitled to a credit for the amount the employee earned during the remainder of the term.

But regardless of the origin of this rule, its purpose or wisdom, it is now too firmly embedded in our jurisprudence to justify its eradication; however, it should be limited to its present scope, and not extended as an instrument of greater injustice or to more grievous oppression of the employer. In its enforcement, equity and justice should be done the employer as well as the employee.

If we apply this rule to the facts of this case in the light of the foregoing observations, then we are clearly of the opinion that the plaintiff was not entitled to interest on the whole amount sued for from the institution of the suit, but only on the *monthly installments as they became due under the contract,* whether before or after the institution of the suit.

Section 7181, Revised Statutes 1909, prescribing the rates of interest judgments shall bear has no application to interest on installments not bearing interest, and therefore not existing and not due at the date of their rendition. Such installments should bear six per cent interest from and after maturity, *whether they mature before or after judgment, and the judgment should so provide.*

We are, therefore, of the opinion that the judgment of the circuit court to the extent of allowing interest on all sums not due, whether before or after the rendition of judgment, is excessive and erroneous.

V. The further point is made, that since the damages for which the judgment was rendered was composed of monthly installments due and *not due* at the date of its rendition, the trial court erred in not finding the then "present worth" of those sums not due, according to the life tables, and in not rendering judgment for only the aggregate of the installments then due with interest thereon, and the then "present worth" of those installments not then due. In other words, I understand counsel to contend that the trial court should have deducted from each monthly installment not due at the date of the judgment, a percentage equal to six per cent per annum, from that date until due, according to the contract,

*Present Value of Future Salary.*

and then have rendered judgment for an amount equal to the installments then due with interest plus those not then due, less said six per cent deduction.

That contention of counsel, in my opinion, is well founded; it is based upon sound reason and common justice. While it deducts six per cent per annum from the monthly installments not due him at date of the rendition of judgment, yet it gives him those portions of his salary before due, from one month to many before he could have collected them had the contract not been broken, and had he worked all that time.

For the reasons stated, the judgment is reversed, the cause remanded with instructions to the circuit court to make the deductions mentioned, due consideration to be given to the time which has since elapsed, and to render judgment for the plaintiff for the balance found by the court to be due him.

*Graves, J.,* concurs in separate opinion in which *Blair, J.,* concurs; *Bond, P. J.,* concurs in paragraph 3 and result.

GRAVES, J. (concurring.)—I concur in all that is said in this opinion upon the question of non-liability of defendant upon the first count of the petition, and upon the general question of the liability of the defendant upon the second count.

I agree also to the proposition that the contract price is the prima-facie damages for the breach of the contract, and that under our rule it devolves upon the defendant to overcome these prima-facie damages by proof contra. In this case there is no proof contra, and the question is what are the prima-facie damages under the contract. Had the suit been brought after the expiration of the contract the right measure of damages (there being no proof contra) would have been the aggregate monthly installments of the salary, plus legal interest on each of such installments from the time they became due, up to the entry of judgment. On the other hand, where suit was (as here) brought immediately upon the breach of the contract, it occurs to me that the prima-facie

Salmons v. Railroad.

damages should be (1) the aggregate amount of the installments due or past due at the date of judgment, together with legal interest on all past due installments from the time they became due to the entry of judgment, (2) as to installments not due at date of judgment, but to become due in the future, the present worth of each of such undue installments should be found, and the aggregate of these sums be added to the aggregate of the due and past due installments first above mentioned. These are mere matters of arithmetical calculations, and I think the case should be remanded with directions to the circuit court to recast its judgment in accordance with this rule, taking the entry of the new judgment as the date from which to compute interest, or find the present worth of installments. It may be the principal opinion covers this rule, but I am not certain, and hence this separate concurrence. *Blair, J.,* concurs in these views.