E. W. DINGMAN, Respondent.

v.

ELIZABETH ARDEN SALES CORPORATION; Appellant.

No. 22283.

Kansas City Court of Appeals. Missouri.

Nov. 7, 1955.

W. H. Curtis, W. M. Symon, Jr., J. C. Mordy, Morrison, Hecker, Buck, Cozad & Rogers, Kansas City, for appellant.

Rex Parr, Kansas City, for respondent.

BROADDUS, Judge.

This is an action brought by plaintiff, E. W. Dingman, a former employee of the defendant, Elizabeth Arden Sales Corporation, to recover damages allegedly resulting from the cancellation of an employment contract by the defendant. Plaintiff obtained a verdict for $1,750, plus interest in the sum of $157.50, or a total of $1,907.50. Defendant has appealed.

Plaintiff's petition alleged that defendant was indebted to him in the sum of $1,750, based upon a written contract, the terms of which are found in a letter to plaintiff from Mr. Carl W. Gardiner, Executive Vice-President of the defendant, dated December 14, 1951.

Defendant's answer admitted the execution of the contract and alleged that it "has paid plaintiff the full amount due him under his employment agreement."

The letter above referred to is as follows:

"Dear Mr. Dingman:

"This will confirm your conversations with Mr. George Carroll whereby you will become the Elizabeth Arden Territorial Manager, effective January 1st, 1952, covering the following states:

"Washington Oregon
Idaho Montana
Wyoming Colorado
Utah

"This arrangement is made for the calendar year of 1952. Your commission rate will be 5% of the total net sales covering shipments into your territory for the calendar year of 1952.

"Against commissions to be earned you will be given a drawing account of $1500 per month, $800 of which will be considered as salary and the remaining $700, for expenses. This drawing account will be paid semi-monthly. All of your living and traveling expenses, Christmas Show expenses and any and all other expensess incurred by you as an employee of the Elizabeth Arden Sales Corporation are to be paid by you from this allowance.

"For the calendar year 1952, it is agreed your gross earnings will not be less than $25,000, this to include all expenses."

* * * * *

On October 20, 1952, plaintiff advised defendant that he was resigning his position as sales manager as of January 1, 1953. It was his intention to return to work with his former employer, defendant's competitor in the cosmetics business. Defendant by telegram dated October 22, 1952, and by subsequent letter dated October 23, 1952, notified plaintiff to cease work immediately under his contract. Plaintiff complied with

these instructions and did no further work during the remainder of the calendar year 1952.

Defendant continued to pay plaintiff on his drawing account by semi-monthly checks at the rate of $800 per month until the end of the year 1952. Commencing with the last half of October, and during the months of November and December, 1952, defendant did not forward to plaintiff the semi-monthly checks at the rate of $700 per month which represented expenses on his drawing account. By the end of the year 1952, defendant had paid plaintiff $9,600 on his drawing account at the rate of $800 per month for 12 months and $6,650 on his drawing account at the rate of $700 per month for nine and one-half months. Thus at the end of 1952, defendant had paid plaintiff the sum of $16,250 on his drawing account. The defendant then paid to the plaintiff the sum of $7,000 in a lump sum at the end of the year. The total payments to plaintiff aggregated $23,250 during the calendar year 1952.

Plaintiff's employment required that he travel throughout his territory, and he conceded that had he continued to work for defendant after the termination of his contract, he would have traveled in his work and would have incurred expenses while traveling this territory, which consisted of seven states mentioned in the letter of December 14, 1951. In his testimony plaintiff gave varying estimates of the amount of expenses that he would have incurred during the balance of the contract period. On direct examination he testified that it was always expected "that his actual expenses would run considerably more than the $700" per month figure set forth in the contract. Later on in his direct examination he stated that he doubted if his expenses for the remainder of the year 1952 would have averaged $700 per month. During the time plaintiff worked for defendant, he had expenses in the amount of $8,957.87 or an average of $918.76 per month.

At the conclusion of plaintiff's case defendant moved for a directed verdict and this motion was overruled. The defendant stood upon its motion and offered no evidence.

Defendant's first contention is that the court erred in overruling its motion for a directed verdict for the reason that there was no substantial evidence showing that plaintiff sustained any damages by reason of the termination of his employment contract.

The determination of this case must necessarily turn upon a construction of the terms of the employment contract between the parties as contained in the letter dated December 14, 1951, from the defendant to the plaintiff. The letter states in part, that:

"For the calendar year 1952, it is agreed your *gross earnings* will not be less than $25,000.00, *this to include all expenses.*"

■ Under the terms of this letter there is absolutely no doubt but that plaintiff's expenses were to be included in the $25,000 minimum. First, the letter refers to "gross earnings" rather than "net earnings." Second, it specifically states, "this to include all expenses." Plaintiff asserts that he was entitled to receive "a minimum of $25,000" for the year 1952. He overlooks the plain language of the contract relative to "expenses". Courts will not make contracts for parties, but will only enforce them as written.

■ The verdict of the jury has the effect of giving the plaintiff more than he would have received if he had worked for the full year. This is so because, in order to complete his contract, plaintiff would have been required to travel throughout his territory and would, according to his own evidence, have incurred substantial expenses. After termination of plaintiff's services by the defendant on October 22, 1952, these expenses were not incurred. Plaintiff was therefore not damaged in the amount of any expenses which he would have incurred after that date. The law will not place plaintiff in a better position than he would have been had the contract been completed on both sides.

■ The rule is well established that expenses which plaintiff would have incurred must be subtracted from the earnings to which he would have been entitled if the contract had not been cancelled. In other

words, plaintiff can only recover what would have been profit to him. This is the rule that has been adopted by a number of cases involving employment contracts for a definite term, which were cancelled prior to their expiration date by the employer. These cases generally involve salesmen employed on a commission basis who were required to pay their own expenses in earning the commissions. In each case the employee was attempting to recover damages based upon the commissions which he would have earned by continuing to work for the remaining term of the contract had it not been cancelled by the employer.

The Springfield Court of Appeals recognized the logic and justice of this rule in Clark v. Smalley Tie & Timber Co., Mo. App., 180 S.W. 435. The Clark case involved the breach of a contract to haul ties and the court held that certain expenses which the plaintiff would have incurred in carrying out the contract must be deducted from the contract price to determine plaintiff's damages. In the course of its opinion the Court stated, 180 S.W. loc. cit. 437:

" * * * If a man is employed as traveling salesman at $200 per month, his traveling expenses being paid by his employer, then on being unjustly discharged, he can tender performance and recover the contract price, subject to having same diminished on proof that he could have found similar employment. But suppose he is employed at $300 per month and has to pay his own traveling expenses, or has to furnish and maintain an automobile or other means of conveyance, then he cannot, on being discharged unjustly, either by continuing his work and expenses, or by tendering performance, recover the full contract price, but only so much as is clear profit to him after deducting his expenses. * *"

This court applied this general rule in the case of Hicks v. National Surety Co., 185 Mo.App. 500, 172 S.W. 489. In that case the plaintiff had failed to get a contract for carrying government mail because of defendant's failure to issue its surety bond or notify plaintiff of its refusal in time for him to have gotten another bond. Plaintiff recovered judgment in the trial court. This court in reversing the judgment stated, 172 S.W. loc. cit. 490:

" * * * The contract price plaintiff was to receive per year was $1485. *We must first estimate what it would have cost plaintiff to earn that sum.* In estimating the cost we must, of course, assume that he would comply with his proposed contract with the government; for compliance with his contract was necessary to his receiving compensation for his service. * * *" (Emphasis supplied.)

In the case of B. Bluethenthal Co. v. Mc-Dougal, 163 Miss. 406, 141 So. 291, 142 So. 13, the court reversed a judgment for plaintiff in the amount of $834.56, the commissions earned by his successor during the remainder of the year. The court held that the traveling expenses of his successor had exceeded this amount and that plaintiff was entitled only to nominal damages. On rehearing, the sole question was the measure of damages and the court reaffirmed its original opinion, stating, 142 So. loc. cit. 14:

"It is a fundamental rule that, in a suit for damages for breach of a contract the plaintiff is to be compensated only for the profits he would have made had he been permitted to complete the contract. His commissions would represent the total earnings under the contract, and, as he would have to expend considerable money of his own in carrying out the contract, he would only be damaged the difference between the commissions and the expenses necessary to be incurred in earning them. That is the only profit that he was entitled to. * * *

"It necessarily follows as a corollary that, *where an employee is to pay the expenses in earning commissions, these expenses must be deducted in order to determine whether he has been damaged or not, and the extent of his damages.*

"It is difficult to see how he could be damaged the total amount of the commissions, when he would necessarily have had to expend considerable money to earn them. * * *" (Emphasis ours.)

Likewise, in Kahn v. Antevil, 248 App. Div. 899, 290 N.Y.S. 367, loc. cit. 368, the court stated this rule as follows:

"* * * We are of the opinion that the verdict as a matter of law represents excessive damages, in that it is for the agreed amount of the drawing accounts for the unexpired term of the one year contract of employment, without deduction of any amount for the employee's traveling expenses, which, the undisputed proof demonstrates, were to be paid by him from the drawing account. *Hence the award to the employee by reason of the employer's breach accords to the employee a greater financial benefit than he would have received if the employer* had performed the terms of the contract. This is contrary to law. * *" (Emphasis ours.)

Other cases to the same effect are Palmer v. New York Herald Co., 228 App.Div. 176, 239 N.Y.S. 619, and Swisher v. Kimbrough, 25 Ohio App. 233, 157 N.E. 823.

In an annotation in 41 A.L.R. 1175, entitled *"Recovery by Commission Salesmen Given Exclusive Territory Where Employer Breaches Contract of Employment,"* Section III(d), the annotator concluded as follows (loc. cit. 1183)

"It seems that upon the breach of such exclusive agency contracts as are considered in this annotation, the agent is not entitled to recover the full amount of commissions that he might have earned in the territory assigned; *reduction must be made for the amount of expense which would be necessarily incurred in selling the goods,* * *." (Emphasis ours.)

■ There can be little doubt of the soundness and fairness of the rule announced in the above cases. Under the agreement between the parties, plaintiff was clearly entitled to be compensated in the gross amount of $25,000, *less his expenses.*

Plaintiff testified that it was "always expected" that his "actual expense would run considerably more than the $700 per month" figure set forth in the contract. He also stated: "I have records that show the ex-

penses for the time that I worked for the corporation which were approximately $8,900."

The records referred to by plaintiff were used to prepare the itemization of his expenses during the part of the year he was employed by defendant. This itemization shows that plaintiff's expenses had totaled $8,957.87 through the month of October, 1952. Since plaintiff received defendant's telegram notifying him to cease work on October 22, 1952, he actually worked only about 9¾ months. This figure of $8,957.87 divided by 9¾ months, indicates that plaintiff's expenses had averaged $918.76 per month while employed by defendant.

However, defendant was not entitled to have its motion for a directed verdict sustained. Plaintiff testified that defendant made no allowance to him to cover the expenses he had incurred from October 15 to October 22, 1952. Defendant's brief, in effect, concedes this to be true. Certainly the expense allowance was to continue up until the date of the termination of plaintiff's employment (October 22, 1952.) Defendant so construed the contract. Its letter to plaintiff dated October 29, 1952, contains this statement: "It is our intention to continue your salary payments through December 31st and on this date send you the difference between salary already drawn and total salary guarantee, excluding expense money for the period from October 22nd through December 31st, 1952." Plaintiff produced records showing that these expenses totaled $313.86, the correctness of which defendant did not dispute.

It follows from what we have said above that defendant's second point, that the verdict is excessive, is well taken.

If plaintiff will, within 15 days from the date of filing this opinion, enter a remittitur in the amount of $1,593.64, the verdict in plaintiff's favor will be affirmed, in the amount of $313.86 as of the date of the original judgment, and the judgment, as so modified, will stand affirmed; otherwise, the judgment will stand reversed and the cause remanded.

All concur.